United States District Court of Florida
at Fort Lauderdale

Christopher Tavorris Wilkins
movant,
vs
United States of America
Respondent,

U.S.D.C # 19-CR-80032-RKA

Pro'se memorandum of Law In Support
of motion To vacate, Set Aside or
Correct Sentence or Conviction
Pursuant to 28 U.S.C. § 2255

Comes Now Christopher Tavorris Wilkins #02920-104, movant
In the Above Styled and Numbered Cause and Respectfully
Submits This memorandum of Law In Support of the motion
To vacate. Pursuant to 28 U.S.C. § 2255 and show The Court
The Following Facts, Circumstances and point of Law.

## Introduction

Mr. Wilkins asks This Honorable Court to vacate His Conviction
and Sentence on the Basis That His Conviction and Sentence
was The Result of Sixth Amendment Constitutional Violations,
Fundamental Fair Trial violations, Fraud upon the Court.
In Addition To grossly under Represented by Counsels In-
Effective Assistance performance, That Resulted In a
17 1/2 year IMPRISONMENT. But For THESE Constitutional
Violations Mr. Wilkins would Have Been Found Not guilty
On all Counts of The Superceding Indictment. The Conviction
and Sentence Resulting From These Constitutional violations
Should be vacated and Remanded For New Trial.

## Jurisdiction

Pursuant to 28 U.S.C. 2255 a prisoner In Custody under
Sentence of a Court Established by Act of Congress

1.

Claiming the Right to be Released upon the Ground That the Sentence was Imposed In violation of the Constitution or Laws of the United States... or is otherwise Subject to Collateral Attack, may move the Court which Imposed the Sentence to vacate, Set Aside, or Correct Sentence. Mr. Wilkins So moves this Court on Grounds that His Conviction was achieved and Sentence was Imposed as a Result of Proceedings Wherein he was denied His Sixth Amendment Rights, Fair Trial, Fraud upon the Court, and Effective assistance of Counsel.

## Review Standards

A motion For Relief under 2255 Follows the procedure Establish By the Rules Governing 2255 Cases In the United States District Court" ("Rules") The Text of 2255 states that unless the motion and the Files and Records of the Case Conclusively Shows that the prisoner is Entitled to No Relief, the Court Shall cause Notice Thereof to be Served on the United States Attorney, Grant Prompt Hearing Thereon, Determine: (1) the Issues and make Findings of Fact and Conclusions of Law with Respect there to. Similarly the Rules dictate that upon Initial Consideration by the Assigned District Judge a § 2255 motion Should be dismissed only If It plainly appears From the motion, any attached Exhibits, and the Record of Prior Proceedings that the moving Party is Not Entitled to Relief. (2) In all other Cases, the Judge must order the United States Attorney to File An Answer, motion, or other Response In A Fixed Time or to take action the Judge may order. The Rules Authorize where Appropriate and by order

2.

of the court discovery Proceedings, an Expansion of the Record, and an Evidentiary Hearing Subsequent to the "Preliminary Review" Stage set out In Rule 4. The ultimate Legal standard For motions brought pursuant to § 2255 is Prescribed by Statue:

IF The court Finds That... The SENTENCE Imposed was Not Authorized by LAW or otherwise open to Collateral Attack, or That There Has Been Such a denial or Infringment of The Constitutional Rights of the PRISONER as to Render The Judgment vulnerable to Collateral Attack, The court Shall vacate, and Set The Judgment aside and Shall discharge The PRISONER or Resentence him or Grant Him a NEW Trial or CORRECT The Sentence as may appear, Appropriate.

**I.**
Ground 1    Improper venue For Counts 6, and 7 of Superceding Indictment violation of Defendants 6th Amendment Rights and Fed. R. CRIM. P. 18.

**II.**
Ground 2    Third party Private Communication by Court Room Security and Juror #10 6th Amendment violation. Remmer Hearing Needed.

**III.**
Ground 3    ALLEN Charge multiple Instructions To Keep deliberating After Deadlock and Comments were COERCIVE 6th Amendment Fair Trial violation.

**IV.**
Ground 4    Fraud upon The court. Fundamental Fair Trial violation.

**V.**
Ground 5    Ineffective Asst of Counsel Failure to move For mistrial and or object to courts multiple Instructions To KEEP deliberating To COERCE A verdict From Jury ███████████

**VI.**
Ground 6    Ineffective Asst. of Counsel Failure to object and move For Remmer Hearing After Third party private communication with Juror and Security officer.

**VII.**
Ground 7    Ineffective Asst. counsel Failure to Raise mulplicity Punishment on Counts 1,3,6,7 Due To Inadequate Research.

**VIII.**
Ground 8    Ineffective Asst. counsel Failure to Raise mental Health Suicide Attempts of Government Key witness Crystal Sweeting.

**3.**

# Statement of Facts

Two Days after Christopher Wilkins was Released From prison To a Half-Way House May 23, 2017 Tr.P. 158-60. Wilkins Began dating His Long-Time girl Friends Best Friend G.H. When C.S. Found out about There Relationship C.S. Nursed a Vendetta against Wilkins and G.H. She Began Calling The United States Attorney's office, making False Allegations That Wilkins Had been selling Drugs out of The Half-Way House,

Therefore The United States Attorney's office Assigned A.T.F. Agent Sara Connors to Investigate. During The 2 year Investigation, She discovered C.S. Had been going to Coleman-2 penitentiary to visit Wilkins Because He Now back In prison For Probation Violation, And Because C.S. Refused to Testify against Wilkins, U.S. Attorney and Agent Sara Connors Charged Her with multiple Felon Charges That carried a Life Sentence using as Leverage To Coach C.S. To Fabricate Her Testimony to The Grand Jury along with Confidential Informant S.A. Also Falsifying His Testimony. Wilkins was Indicted Foir 5 Counts 1). Possession of Ammunition, 2). Possession of a FireArm by a Convicted Felon, 3). Conspiracy to Distribute a Controlled Substance. 4). Use of Fire Arm During and In Relation To A drug Trafficking Crime. To Keep C.S. Away From Wilkins. U.S. Attorney John mc millan, Superceded His Indictment Adding Additional

4.

Two counts 6 and 7. Six Tampering with a witness and Count Seven Tampering with a witness. After a 6 day Trial wilkins was Found guilty of Four of THE SEVEN Counts. 1). Felon IN possession of Ammunition. 2) Felon IN Possession of A FireArm, 6). Tampering with a witness, 7). Tampering with a witness,

wilkins Appeal His conviction IN A Direct Appeal Proceedings, However was Denied Relief and Conviction Affirmed. Now wilkin Appeals IN A 2255 motion To vacate, Set aside His conviction. Attaching AN Application For a 2255 motion along with a memorandum of Law, with Exhibits. Request His Conviction Be Vacated and set Aside Due To Constitutional Violations.

5).

# I. IMPROPER VENUE

Defendants Counts 6, 7, of the Indictment/Conviction were obtained in violation of His 6th Amendment Constitutional Rights and Fed. R. Crim. P. 18

Defendant Argues That His 6th Amendment Rights of the United States Constitution was violated Because Count 6 Witness Tampering 18 U.S.C. § 1512(b) and Count 7 Witness Tampering was Improper Venues For Trial. The defendant states The United States 6th Amendment of the Constitution; and Rule 18 of the Federal Rules of Criminal Procedure guarantee defendants the Right to be Tried in the district in which the crime was Committed. Article III § 2. Defendant Further states From The Facts That Both Count 6, and Count 7 were Committed in United States Penitentiary Coleman-2 P.O. Box 1034; Coleman, Fla 33521 Sumpter County. where He was Housed as an Inmate. Both Counts were Committed on February 26, 2018 and September 23, 2018 of The Indictment at Coleman, Florida The middle District of Florida and Not the Southern District of Florida.

Defendant Relies on Recent case Law Ruling in united states vs Smith; Eleventh circuit Court of appeals 2022 U.S. App. Lexis 1035. (Vacatur of Theft-of-Trade secrets)

In Smith He Argued that The Southern District of alabama was The Proper Venue where He Lived and Took Trade secrets By Computer From Strikelines Computer Server Located in Orlando, Florida; which is the middle District of Florida. And Northern. Florida was Improper place of Venue, Because He Never Committed Any Essential Conduct in that Location. In Smith's case The Eleventh circuit Court of Appeals did a Two-Step Venue Inquire Base on a 1999 Supreme Court Ruling In Rodriguez-Moreno, 526 U.S. at 279. First The

6

Eleventh Circuit Court of appeals Has To Identify the Essential Conduct Elements of the Theft-of-Trade Secrets Count. See; United States vs Bowens, 224 F.3d 302, 311 (4th Cir. 2000).

Second: The Eleventh Circuit Court of appeals "Discern the Location of the Commission" of the Essential Conduct Elements, Which are the only Relevant Elements For Venue, and Determine whether The Location of Their Commission is The Same as the Location of the Trial. See Rodriquez-Moreno, 526 U.S. at 279, After The Inquire In Smith The Appellate Court determined they were Not.

The Court of Appeals For the Eleventh Circuit made clear that In Smiths case "Theft of Trade Secrets" Consist of (5) Five Elements. First The defendant must Intend to Convert proprietary Information To Economic Benefit of any one other than the owner; Second the proprietary Information (U.S. App. Lexis 15) must Be Trade Secrets; Third, the defendant must Knowingly steal, Take Without Authorization, or obtain by Fraud or deception Trade Secret Information; Fourth The defendant must Intend or Know The offense Would Injure The owner of the Trade Secret; And Fifth, The Trade Secret must be Related to A product That is In Interstate or Foriegn Commerce. The Appellate Court states, "The First and Fourth Elements are MENS REA Elements Which ARE IRRELEVANT TO VENUE." See Rodriquez-Moreno, 526 U.S. at 279. The second and Final Elements are Not Elements of the defendants Conduct. See id at 280 N.4.

The Essential conduct Elements of the crime is that the defendant must steal, Take without Authorization, or obtain by Fraud or deception Trade Secret Information See 18 U.S.C. §1832 (a) So That Conduct must Have Taken Place In the Same Location as the Trial. See Rodriquez-Moreno, 526 U.S. at 279; Cabrales, 524 U.S. at 6-7; Bowen, 224 F.3d at 311-12. Smith was Prosecuted For Theft-

Of Trade Secrets In The Northern District of Florida. But The Parties agree that Smith Remained and lived In mobile, which is the Southern District of Alabama during the Commission of the Crime. The Parties also agree That the data was Taken From Servers Location In the middle District of Florida. Also In Smiths Case The Eleventh Circuit Court of Appeals Concluded That The VENUE would BE PROPER In the Southern District of Alabama, WHERE Smith Lived using His Computer, WHEN HE Took The Trade Secrets, But VENUE was Improper In The Northern District of Florida, because Smith NEVER Committed any Essential Conduct In that Location. SEE Rodriquez-moreno, 526 U.S. at 279; Cabrales, 524 U.S. at 6-7.

In The Instant Case, Defendant Wilkins Case is Identical to Smith. VENUE was Not proper For the Southern District of Florida WHERE He went to Trial For Count 6 and 7 of His Indictment, But The middle district of Florida would be PROPER VENUE for Tampering With Witness In Count 6 and 7 on the dates of February 26, 2018 and September 23, 2018 Alleged In His Indictment, Using The Same Two-Step VENUE Inquire That The Eleventh Circuit Court of appeals Used In Smith's case, In defendant Wilkins Case, Identifying The Conduct Constituting the Offense (The Nature of the Crime) and THEN discern the Location of the Commission of the Criminal Acts" Rodriquez-moreno, 526 U.S. at 279. The Defendant AVERS That The Two-step VENUE Inquiry of First Identifying the Essential conduct Elements of Tampering with a Witness. See United States 224 F. 3d. 302, 311 Bowens.(4th Cir. 2000) And THEN Second discerning the Location of The Commission of the Essential Conduct Element, Which are the ONLY Relevant Elements For VENUE

and determine whether The Location of their commission is as the same as the Location of the Trial, The Supreme Court In Rodriguez-moreno, 526 U.S. at 279 supports his argument that The middle District of Florida would be proper venue and the Southern District of Florida Fort Lauderdale Broward County was not the proper venue for His Trial.

Tampering with a witness statue 1512 (b) Has Two Essential Elements. The first (The actus Reus) Knowingly uses Intimidation, Threatens, or corruptly Persuades another Person, or attempt to do so or Engages In misleading conduct Towards another. 1512(b)'s Essential conduct Elements of the crimes; Are that The defendant must Knowingly use Intimidation, must Threaten, or must corruptly Persuade Another Person, or must Attempt to do So, or must Engage In misleading conduct Towards another PERSON. So That conduct Took Place In The same Location as The Trial. see Rodriguez-moreno, 526 U.S. at 279; Cabrales, 524 U.S. at 6-7; Bowen, 224 F.3d. at 311-12.

The Second (mens Rea) 1512(b)(1), (3).

Subsection (1) Influence, Delay, or Prevent the Testimony of Any Person In An official proceeding, OR;

Subsection (3) Hinder, Delay, or Prevent the Communication to A LAW Enforcement officer or Judge of the United States, of Information Relating to Relating to the Commission or possible Commission of a Federal offense or violation of conditions of Probation, Supervised Release, Parole, or Release pending Judicial proceedings.

Tampering with witness Statue 18 U.S.C. 1512(1), (3) are

9.

(Mens Rea) That are Irrelavant to a Two-step venue Inquiry. They are Not Essential Conduct Elements of the Defendants Conduct Rodriguez-moreno 526 U.S. at 279-280 N.4.

However Subsection(1)and(3) of the Statue Only Establish the Defendants Intent, To Influence, Intent to Delay, Intent to Prevent the Testimony of any Person In an official Proceeding or

(3) Intent To Hinder, Intent to delay, Intent to prevent the communication to a Law Enforcement officer or Judge of the united States of Information Relating to the commission or possible Commission of a Federal offense or a Violation of condition of Probation, Supervised Release, Parole, or Release Pending Judicial Proceedings.

Wilkins Argues He was prosecuted For Tampering with witness U.S.C. 1512(b)(1)(3) In the Southern District of Florida Fort-lauderdale, However He lived and Remained In Coleman, Florida- Federal Penitentiary U.S.P.-2 when He Allegedly committed the crime. The Governments star witness Crystal Sweeting who is the mother Of Wilkins son and victim, who the charges of witness tampering Arise From, In count 6 and 7 on the Dates of Febuary 26, 2018 and September 23, 2018 of the Indictment. These are the Exact Dates Defendant Wilkins Essential Conduct at Coleman-2 Penitentiary In the middle District of Florida took Place vidating 18 U.S.C § 1512(b)(1),(3). The Governments own Star witness and victim and mother of Defendants Child Supports Defendant Wilkins Improper Venue Claim. Trial Page(1289 8-25)

10.

Line. 8   Okay The dates on count 6 an 7 are Through Febuary 26, 2018 Through September 23, 2018 That's the Period of Time when This witness Tampering supposedly Took Place. Now this is the same period of time when Crystal Sweeting is driving to Coleman prison to visit Chris Hensley ... Chris Wilkins. This is the Time when she's shareing Letters Back and Forth Saying Love you, Love you, Love you. This is the Same Time when they're getting These pictures Taken that they're married.

The Record Supports Defendant Wilkins claim that The Southern District of Florida was Improper venue and the middle District of Florida was **THE** proper venue For His Trial. The Record also Supports Wilkins Domicile, where The Essential Conduct Elements of witness Tampering § 1512(b) at Coleman-2 Penitentiary, In the middle District of Florida By The Pre-Ponderance of the Evidence Took Place. Through Visits, Phone Calls, Etc. The Record Supports the united states Constitution.

The Sixth Amendment and Rule 18 of the Fed. R. Crim. P. That guarantees Defendant(s) the Right to be Tried In the District In which the crime was Committed." united states vs Little, 864 F. 3d. 1283, 1287 (11th cir. 2017) see u.s. Const. Art. III, § 2, cl. 3; Id Amend. VI; Fed. R. Crim. P. 18. Even In the Event The court Looks at the Evidence by they Preponderence of the Evidence In light most Favorable to The Government, The Governments Argument put Forth would Be unpersuasive In light of the Constitution and Fed R. Crim. P. 18 along with Supreme Court Ruling In light of Eleventh Circuit Court of Appeals Rulings and Eleventh Circuit District Court Ruling All In Favor of The Defendant.

Defendant Christopher Wilkins was Prejudiced and Deprived of His Fundament Right to A Fair Trial In The ~~District~~ the Crime Proper Venue

**11.**

was continued.) In the middle District of Florida, The Defendant was Deprived of all Pre-Trial Proceedings, He was deprived to be Appointed Counsel by the Court In the middle District of Florida, Deprived of Initial Appearance, Deprived of Arraignment, Deprived of Bond Hearing, Deprived of Possible Plea-Bargain Hearing, Deprived of Jury Selection and voir dire questioning In The middle District of Florida, Deprived of His right to discovery or Right under 6th Amendment To Represent Himself Pursuant to Farretta vs California. In the middle District of Florida. The Remedy For Improper Venue is Vacatur of Counts 6 and 7 of the Indictment SEE United States vs Davis 666 F.2d.195,262 (5th Cir. 1982).

# II. Third Party Private Communication By Court-Room Security Officer With Juror #10 PreJudiced Defendant Remmer Hearing NEEDED.

Defendant Wilkins Argues That counts 1,3,6,7, of His Indictment must be vacated, Set aside Because they were obtained In violation Of His Sixth Amendment Right of the Constitution that Deprived Him Of a Fundamental Fair Trial.

Defendant Argues it was Reported from The Judge to the Defense That a mid-Trial private Communication betwEEN the Court Room Security Guard alan LaTour and Juror #10 Paul Thompson Had accurred on a 15 minute RECESS. That is Forbidden. Mid-Trial TR.P. 611 1-5

> Line.1 Spoke Along to my Court Security officer autside the presence of other Jurors an Alan Then Instructed Her Im not Allowed to Talk to you about This But Put down whatEVER your question is IN writing So my understanding based on that Interaction is

The Defendant Further Argues He was PreJudiced

12

By The Third Party Private Communication, It Has been long Held by The Supreme court In Remmer vs United states, 98 Led 654, 347. U.S. 227 (1954). That once a private communication Between a Third Party and Juror Has been Established, It is Deemed PreJudicial. Mattox vs United states 146 U.S. 140, 36, S.ct.50. In Defendant Wilkins case The court Informed The Defense That court Room Security Guard Alan LaTour Had a private Communication With Juror #10 Paula Thompson. It was Then The courts duty to Hold a Remmer Hearing, To Fully Investigate The private Communication allowing The Due Process That Shifts The Heavy Burden To Rest upon the Government to Demostrate That the communication was Harmless. United States vs Martinez 14 F.3d 543, 550 (11th cir. 1994).

However The Defendant and His attorney was deprived of a Hearing That would allow parties To be Permitted To participate and The Government given The opportunity To carry The Heavy Burden With Demostrating The private Communication was Harmless Remmer, 347 U.S. 230. In Defendants case The Government Didn't carry The Burden or Demonstreate That it was Harmless and Not preJudicial To Defendant. Which Is a matter of Established LAW, The Burden of Proving PreJudice does Not Lie with The Defendant Because it is Presumed The moment The defendant establish That extrinsic Contact With a Jury In fact occurred. United States vs Caporale, 806 F.2d. 1487, 1503 (11th cir. 1984). Cert. denied 482 U.S. 917 (1987), United States vs Perkins, 748 F.2d. 1519, 1533 (11th cir. 1984)

The Defendant Further Argues That The district Court Deprived Him of The Fundamental Right To A Fair Trial.

13.

The Court Defendant was unable to Cross-Examine or ask The Court Room Security Guard or Juror #10 questions. But Instead was given a Speculative Scenario which was One-Sided and Favorable To Alan LaTour The Court Room Security Guard. From what Judge ALTMAN was Told From an Unidentified person, That speculated ████ Juror #10 Paula Thompson Initiated The Private Communication about wilkins Case To The Security Guard First, without any Facts, To Support This Speculation That was given To The Judge Second Hand. The Record is Clear That Immediately After Juror #10 Had Private Communication With Security Guard Alan LaTour She Became an █partial Juror, and Sent a preliminary Jury Note To the Court On Behalf of The 14 Jurors That the Court wanted to Keep To Inform Both Parties about. Tr.P. 608 at 18-25

The Court: All Right, before we bring the Jury In
WE Have A preliminary Jury Note. So WE'VE got Two questions
From ONE -- Please be seated -- From ONE of the Jurors,
In case your wondering, The Juror is Paula Thompson

Room clerk: Number 10

The Court: She's Number 10, She sits In the Back In
THE CENTER
Question 1: From The 14 people (Jury), "She

Tr.P. 609: Says, In Parentheses-how many of us have to agree
on the Same verdict (guilty or Innocent) For the
defendant to declared guilty or Innocent?"
"Question 2: What does it mean guilty In this
case? How many years of Jail will be Considered?
minimum - maximum? (and most likely number of years IF
This case is guilty?
Any proposals From the Government?
Mcmillan: I think your Honor, That I Leave it
up to the court as to whether the court

14

wishes to Instruct the ▓▓
Jury Now or say," You'll Find all that out at the closing
Instruction." But The standard Instruction cover both of
These Issues very clearly. And I guess From the government's
perspective I think that The Answer would be that:
We ▓▓▓ appreciate your question. It's a very good
question. And it will be Addressed In the courts
Instruction to The Jury at the End of the case
Unless your Honor wishes to give them an Instruction
In accordance with Those Instructions Earlier.

The Court: Mr. chapman?

Mr. Chapman: Judge, it sounds like she has -- at
                least that Juror Has Pre Judged The case If shes Talk About
                If we Find Him guilty --

The court: ah, she didn't say that, she said: How
              many are Required To Find Him guilty or Innocent? So it

Trial P. 610

Sounds like shes Open to both possibilities, In question 1
and In question 2 I Read this question as potentially
being Favorable To the defense, But maybe I'm mistaken, because
she's concerned about the possibility of Punishment, which
could cause To Her To Nullify, Even If she were to Find Him
Guilty, But you may Read that differently.
Go Ahead.

Chapman: Judge can you Read the Second question
              Again.

The Court: Yes, The Second question, Though I Think
              It's Important To Note, comes after the First question and
They're both written by the same person, So I'll Read Both
again.

Question: 1 From the 14 people On the
              Jury (sic) how many of us have to Agree on the Same
              verdict (guilty or Innocent) For the defendant to be
Declared guilty or Innocent?

15.

and the second question is what does it mean "guilty In this case? How many years of Jail will be considered? maximum Sorry ~ minimum - maximum? (and most likely Number of years) If the case is guilty?" (and most likely Number of

Mr. Chapman: It Really Sounds as IF they'RE already Discussing the case amongst

The court: Well, This Juror actually mentioned

Trial Page 611

Spoke along to alan my court security officer outside the PRESENCE of the other Jurors and alan then Instructed her I'm Not allowed To talk To you about this, but Put down whatever your question is In writing" So my understanding based on That Interaction is That this Juror has done This on Her own Based on that Fact That she waited until she was alone with alan To begin asking the question of alan and that alan Instructed Her To put Her question down In writing all outside The PRESENCE of the other Jurors, That's one and Two Then she specifically at the Top of this Note, which I didn't Tell you In the First INSTANCE She wrote Paula Thompson, Partic'pant Number "and Then she writes her exact Juror Number Suggesting again very Strongly, That this is only coming From Her and Not From any of the other Jurors

Mr. Chapman: Your Honor, I would ask that she be Brought out and the Court question her as to whether or Not They are already discussing about mr. wilkins guilt or INNOCENCE with the other Jurors.

The court: I'm Not going To do that, because THERE'S NO EVIDENCE that THERE is, and I'm Not going To begin INJecting my view to [THEM] That maybe that's Something They should be discussing because It's Not and I don't Find There's ANY EVIDENCE based on this Note, That thats The Jurors are

16

However The Court In order To avoid a motion For New Trial or Remmer Hearing For prejudice because Of private Communication between a Third Party and Juror From being Filed. The court decide To Reinstruct Juror #10, and Ignored The prejudicial position The private Contact between His court Room Security Guard Alan La Tour and Juror #10 Paula Thompson Left the Defendant In.

As It stands, wilkins was In a prejudicial position with A impartial Juror, Before The court called Juror #10 paula Thompson out to be Reinstructed. And Defendant wilkins Remained In that prejudicial position with a impartial Juror until the verdict. The Defense Nor The Government was Allowed To Ask Juror #10 Paula Thompson questions when she was being Reinstructed by The court. Therefore The Government failed To Satisfy The Prong, That There was No prejudice That The Communication was Harmless, That is Require To prove by The Sixth Amendment of the United States Constitution, which, when Not proven violated wilkins 6th amendment Right and Invalidates The verdict.

## Sixth Amendment

The Sixth Amendment guarantees That the accused shall Enjoy the Right to a Trial by an Impartial Jury. And Be Confronted with The witness against Him, In a Criminal Case. Any Private Communication, Contact, or Tampering, directly or Indirectly, with a Juror during a Trial about the matter Pending before The Jury is For obvious Reasons deemed prejudicial, If Not made In pursuance of Known Rules of the court and The Instructions and directions of the court made during the Trial, with Full Knowledge of the Parties. The Presumption is Not Conclusive, But the Burden Rest Heavily upon the Government To Establish, After Notice to An Hearing of the defendant that Such contact with the Jurors was Harmless to the Defendant.

17.

An orderly Procedure would Require a Remmer Hearing to Determine the Facts, So there would be a definite Record of the details of the Incident and Answering the question of "what was actually Said between the two, that triggered a immediate Response with a preliminary Jury Note Right after the Private Talk mid-Trial" Ryan vs United States, 89 App. D.C. 328, 191 F.2d 779. without the Remmer Hearing, the Situation For the defendant Became worse that caused a dominoe effect of Sixth Amendment violations to pile-up. The defendant Wilkins was already Stuck In a Prejudicial Position, Before the District Court Decided to Instruct Juror #10, Instead of ordering a Remmer Hearing.

As the Proceedings Continued the Record Revealed A Impartial Panel of (14) Fourteen Jurors From the preliminary Jury Note Stating, "On behalf of the (14) fourteen Jurors." Strongly Suggesting Juror #10, went back to the Deliberating Room and Reported the Private communication to the Jury Panel between Herself and the Court Room Security, and what He Said to Her about the case. Without the Remmer Hearing the 14 Jurors were confined to A impartial Position Against defendant Wilkins. Therefore violating the Sixth Amendment Impartial Jury Prong. The Sixth Amendment guarantees That The Accused Shall Enjoy the Right to a Trial by an Impartial Jury.

THE District Courts Improper Procedure To Avoid A NEW Trial OR mistrial by REinstructing Juror #10 Did Not CURE, The Violation of Sixth Amendment Prejudice Prong. That The Defendant was stuck IN ONCE The Third Party Contact With Juror #10 paula Thompson and Court Room SECurity alan LaTour was made. Remmer, Vs united states, 98 LED 654, 347 U.S. 227 (1954). Neither did It CURE The Sixth Amendment Violation Trial by An Impartial Jury Prong ONCE Juror #10 Heard what Court Room SECurity Guard Alan LaTour Actually Stated to Her about wilkins CASE, and WENT back to The Deliberating Room and Reported To The other (13) ThirTEEN Jurors Mid-Trial Immediately. MaTTox, 146 U.S. at 150; REMMER 98 347 U.S. 227 (1954).

Had The District court ordered a REmmer Hearing and Allowed The Due Process Shifting Pendulum To sway back-N-forth between The DEFENSE and GovernmENT Through Full Investigation with questioning, cross-Examining All fourTEEN Jurors, The court Room Security Guard Alan LaTour, and The UNNamed pERSON, That Reported, The Private Comm-unication To the Judge and Not Just REinstructing ONE ScarED put ON The Spot Juror. ParkER Vs GladdEN 385 U.S. 366. United States vs watchmaker, 761 F.2d 1459, 1465 (11th cir. 1985) It is ONly ThEN AFTER A REmmer HEARing That It CAN BE dETERmiNED WhETHER OR Not The

19.

Government carried its Heavy Burden of Harmless. (And The Answer To that question is NO). The failure of ANY District Court To Hold a Hearing Constitutes an abuse of Discretion. United states Vs watchmaker, 761 F.2d. 1459, 1465 (11th Cir. 1985).

Now Faced With Another Sixth Amendment Prong violation. The Right For the accused to BE Confronted With the Witness against Him.

### Sixth Amendment

The accused shall ENJoy The Right To a Trial by an Impartial Jury. And BE Confronted With The Witness against Him IN A Criminal Case.

It Has been Long Established Law by The Sixth Amendment and The Supreme Court, That Evidence developed against a defendant shall Come From The Witness stand IN a public Court Room. WHERE THERE is Full Judicial protection of The Defendants Rights of confrontation of Cross-Examination and Counsel. Turner Vs Louisiana 379 U.S. 466, 472-473, 13 L.Ed. 2d. 424, 428, 429, 85 S.Ct. 546 (1965). The Right of Confrontation and Cross-Examination are Among The Fundamental Requirements of a Fair Trial. Pointer Vs Texas, 380 U.S. 400, 13 L.Ed. 2d. 923, 85 S.Ct. 1065 (1965).

The District Court gave his speculative Theory Without a Remmer Hearing To Investigate How the contact between Court Room Security Guard, and Juror #10 came about and What was Said between The Two. The Judges Theory

20.

which was pure Speculation **And** one-sided ▌ In Favor of His Court Room Security Guard alan LaTour, From what was Told To the Judge by an unnamed Person, Who saw the Private Communication. However Judge Roy Altman NEVER mention this persons Name on Record. ▌ From The Judges Speculative Theory **or** what He was Told That, Juror #10 went to the court ▬▬ Room Security Guard First. **And** The only Thing Alan LaTour Said, ▬▬▬▬▬▬▬▬▬ Not Allowed To Talk To you about This But put down what I'm Ever your question is In writing. Trial Tran. 611 at 1-5

SPOKE Along To my Court Security officer outside the presence of other Jurors an Alan Instructed, I'm Not Allowed to Talk to you about This But put down whatever your question is In writing, So my understanding based on that Interaction is....

However THERE is No Factual Evidence to Support this speculative Theory. No Affidavit From Alan LaTour That Juror #10 paula Thompson Initiated this private Communication First. No Sworn Testimony From Alan LaTour or Paula Thompson of what Alan LaTour actual said To Paula Thompson. No Affidavit From Juror #10 Paula Thompson That She went to the court Room Securit officer First. THERE'S No Affidavit From This unnamed Person **That** gave This Information To the ▬▬ or what He saw and Heard, THERE'S No Factual Evidence No Affidavit stating Juror #10 ▬▬▬ was outside The presence of other Jurors. This is a one-Sided Speculative Theory From The Judge And possibly Could Have been Edited To Avoid A mistrial. All In favor of The Judges Court Room Security officer alan LaTour. And Juror #10 was Called Forward To be Reinstructed. She was **when**

21.

ONly asked Leading questions but NEVER asked The Important questions. Why did she write The PRELiminary Jury Note? What was Said between His court Room Security officer ALAN LATour? who Initiated The Private Communication First?

TR.P. 613; TR.P. 614; TR.P. 615

However The RECORD is clear That wHEN paula Thompson was Called to be REInstructed. SHE NEVER admits That SHE Approached court Room SECurity officer First. SHE NEVER Eludes To That speculative THEory.

Leading The Defendant to speculate as To what Happen. DEFENdant believes that court Room Security officer Alan LATour Approached JuroR#10 First To Have a private Communication To Tamper with Juror#10, Directly Instructing Her To Find wilkins guilty.

Alan LaTour was privileged to be PRESENT during defendants Trial, observing all witNESSES Testimony's and from the Evidence PRESENTED and From what HE Saw, He determined, The Governments ENTIRE CASE against Defendant wilkins was built ON False and Fabricated Testimony's From The Governments own Key witNESSES, GRACE HENSLEY, Crystal Sweeting, Sheldon Armstrong, who all Testified Falsely To The Grand Jury, ATF Sara Conners, and U.S. Attorney John McMillan.

Alan LaTour aware The Governments CASE was wEAK and would moRE THEN likely RENDER a Not Guilty verdict From The Jury ON all CouNTS, because of the EgREgious and

22.

grossly Perjured Testimonys From The Governments own witnesses Not only Initiated The Private Communication and Instructed Juror#10. To Find wilkins guilty IN order To Tilt The Scale Back Into The Governments Favor. HE used His status as a Court Room Security To Persuade HER. Fully aware That His Status as a Court Room Security officer Carries weight IN a Jurors Eye. Parker vs Gladden, 385 U.S. 363, 365, 87 S.ct. 468, 17 L.Ed. 2d. 420 (1966)(Noting That official character of the Bailiff as an officer of the court as well as the state-beyond question carries great weight with a Jury which He Had been Shepparding), Turpin vs Todo, 271 GA. 386, 519 S.E. 2d. 678, 682 (G.A. 1999)(The very Nature of The Bailiffs Position serves To Heighten The prejudicial potential a bailiffs communication may Have on the Jury); State vs Johnson, WN App. 443, 105 P. 3d 85, 94 (Wash. Ct. App. 2005) (Noting that a bailiff may be seen as the Judges Agent, And That the Bailiff is viewed by The Jury as speaking on behalf of the Judge).

It is well established court Room Security officer Alan LaTours Non-Recorded statement From a Third Party Private Talk with Juror#10 Paula Thompson Rises to the Level of Sixth Amendment Confrontation Clause violation Depriving wilkins To cross-Examine LaTour concerning His prejudicial statement to Juror#10. Although it may Be unclear exactly what court Room security officer LaTour stated to Juror#10, That she immediately wrote a preliminary Jury Note, asking about defendant wilkins guilt, and How much Time He would get If Found guilty, is obvious From The Facts The Private Communication was about The Defendants guilt. She Refers to His Innocence Twice while The Remainder of the Preliminary Note was about His guilt violating Sixth Amendment Confrontation Clause by Non-Recorded Evidence. United States vs mix 791, F.3d. 603 U.S. App. LEXIS 11267 (5th cir. App. 2015) we Reverse.

23.

It wasn't what was said by The Court Room Security Officer Alan LaTour That was NON-Recorded, That also Needed to be Fully Investigated with a Remmer Hearing. But also what was not Mentioned or edited by the Judge To be more Favorable Towards His Court Room Security Officer and This Unnamed Person, Who gave This Second Hand Information to The Judge.

United States vs mix 791 F.3d. 603 U.S. App. Lexis 11267 (5th cir. App. 2015.) In The MIX CASE, Which dealt with NON-Recorded Evidence NOT IN THE RECORD, That directly pertains to the Paticular case being Considered is by definition an Injection of Extrinsic Information by an outside Source, Even If it is Fabricated or Not In the Record can be Just As preJudicial to a defendant.

The Government In mix Argued to the Court that The Extrinsic Influence and Information That a Juror may or may Have Not over Heard In An Elevator was Not Extrinsic. The Government Proceeded to Interject a Speculative Example of Their Believed Theory, and ask The Court To Imagine That A Juror (Pretends) That SHE over Heard Information { 791 F.3d. 610 } That gave HER Comfort In voting Guilty. But, In Fact She Had Not over-Heard any Information It was Fabricated.

The Government In mix Then Argues That This Situation would Simply Involve The Jurors Strategy to persuade other Jurors and Therefore would be Intrinsic Rather Than Extrinsic Interjection, of Information Into the deliberation Room, However In mix, The Court ReJected that Speculative Theory, And stated a Jurors Reference to NON-Recorded Evidence That

24.

directly pertains to the paticular case being considered is by definition an injection of extrinsic information even if it is fabricated ▓▓▓ was prejudicial to the defendant and jury. Even more so without a Remmer hearing. In the instant case wilkin prejudice because He was unable to cross-examine Alan LaTour as a witness concerning His non-recorded evidence of His statement to Paula Thompson causing Her to be a bias juror Then SHe immediately sends out a preliminary note due to the prohibited private communication from what She Heard from LaTour Although it was non-recorded evidence. ▓▓▓▓ United states vs Chandler 996 F.2d 1073, 1103 (11th Cir. 1993); Pruit vs United states 2022 Dist. Lexis 146654   when a jurors bias arises from 3rd party officer of the court Bailiff or Shepparder influence with non-recorded statements The party must demonstrate that juror in question exhibited bias by Shaoing either an expressed admission of bias... OR Facts Demonstrating Such a close connection to the present case that prejudice must be presumed

Juror number TEN demonstrated She became a partial juror when She heard the statment from court security officer and the proximate cause or close connection resulted in a preliminary jury note. immediately after the statement. Even if the remaining 13 jurors weren't prejudiced by the third party influence and non-recorded private talk, surely Paula Thompson was by pre-mature deliberation Parker vs Gladden 385 U.S. 363 364 66, 87 S.ct 468 17 L.Ed. 2d. 420 (even one juror's prejudice is sufficient to warrant a new trial); Patton vs Vount 467 U.S. 1025, 1037 N.12, 104 S.ct. 2885, 81 L.Ed. 2d. 847 (1984.)

25

Parker vs Gladden supports The position of Prejudice when statements made by A Third Party Bailiff are NON-RECORDED and The defendants 6th Amendment Rights To A Impartial Juror were violated Due To the private Talk. Depriving The Defendant of His Right to Cross-Examine. Parker vs Gladden 347, U.S. 230 N.2 (We do Not Know From The Record, Nor does the Petitioner Know What actually was Said or What actually Transpired, or Whether The Incidents That may Have occurred Were harmful or Harmless.) We Reverse.

Defendant Wilkins ~~~~~ Sixth Amendment Rights were violated by Third Party Contact between courtroom security Alan LaTour And Juror #10 Paula Thompson which Deprived Him of Sixth Amendment Right to a Impartial Jury and Deprived Him of ~~~~~. His Sixth Amendment Right To confront the Witness against Him Alan LaTour. Defendant Wilkins was prejudice when the Court Failed Have A Remmer Hearing, Not allowing the Government To Prove it's burden That the contact by a Third Party was Harmless. ~~~~~ Depriving Wilkins of a Constitutional Fundamental Fair Trial. Defendants Conviction Should be vacated Set aside For New Trial or Remmer Hearing.

## III. Allen Charges multiple Instructions To Keep Deliberating After Deadlocks and Comments Were Coersive.

Defendant Argues That The Comments and multiple Instructions To Keep Deliberating by Alternative Judge In Response To Jurys Announcement of Second Deadlock and An Allen Charge was

26.

GIVEN WERE Sufficiently COERSIVE To DEPRIVE Him of a Fundamental Fair Trial.

Trial Transcript 1388 4-25.

LinE. 4 Jury Entered the court Room
The Court: Please BE SEATED
All Right, WE HAVE all the Jury Back
I HAVE aNOTHER NOTE From THE Jury, all EVIDENCE HAS BEEN REViEWED, and WE aRE Still Completely at a deadlock on Two counts.
I'd liKE To give you aNOTHER Instruction members of the Jury, I'm going to ask that you ConTinuE your deliberations In AN Effort to AGREE ON A VERdict and dispose oF this CASE, And I HAVE A FEW additional Comments I'd liKE For you to consider as you do so.
This is aN Important case. The Trial Has been EXPENSiVE In Time Effort, money, and Emotional strain to both THE defense and the prosecution. IF you FAil to agree ON A VERdict, THE CASE Will be Left OPEN and may HAVE to be Tried again. ANOTHER Trial Will INCREASE -- or Would INCREASE THE Cost to both Sides and THERE IS NO REasoN to believe that the CASE CAN be Tried again by EiTHER Side any better or moRE Exhaustively Than it Has been Tried before you.
Any Future Jury must be Selected In the Same mANNER AND From THE SamE Sources as you WERE Chosen. THERE IS NO Reason to believe That the CASE Could EVER be Submitted to 12

BECAUSE DEFENDANT Wilkins made NO objecTions to the Additional COERSIVE Comments Embedded within the AllEN INstructions at the Time THEY WERE given Eleventh Circuit Court of Appeals Reviews For Plain Error. UNITED STATES VS PRATHER, 205 F. 3d 1265, 1271 (11th Cir. 2000). To Satisfy THE Plain Error Standard THE Challenged Instruction must ConstitutE "ERROR" That is Plain AND That Affects Substantial Rights. UNITED States VS OlaNO, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed. 2d 568 (1993).

27.

A court can only correct a forfeited error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings. An instruction which appears to give a jury no choice but to return a verdict is impermissibly coersive. JENKINS VS UNITED States, 380 U.S. 445, 446, 85. S. Ct. 1059, 1060, 13 L. Ed. 2d. 957 (1965). In JENKINS, after about two hours of Deliberations, The Jury sent a note informing the district judge that it was deadlocked. The district judge called the jury into the courtroom and in the course of his response, stated, That, "You have got to reach a decision in this case" The Supreme court found the instruction to constitute plain error and reversed, and remanded for new trial. United States vs JONES, 504 F. 3d. 1218; 2007 U.S. App. Lexis 24653 (11th Cir. 2007). In JONES after a 2 hour deliberation, The Jury sent a note to the district court announcing a deadlock. The district court called them into the courtRoom and said, "we will do this until you reach a verdict." The next morning, when an alternative juror was put in place of a sick juror. The district court judge said, "There is no need of sending any notes that the jury cannot agree, because you are going to stay here for a long time." The Eleventh Circuit court of appeals found that the district court judges instructions in this context constituted a plainly incorrect statement of law to the jury, that this error affected Jone's substantial rights and that such an error seriously affects the fairness, integrity, and public reputation of judicial proceedings. And found the instructions to have been plain error and reversed. In Brewster vs Hetzel

28.

913 F.3d, 1042; 2019 U.S. App. LEXIS 1931 (11th Cir. App 2019)

The Eleventh Circuit Court of appeal used a model Approach For AN ALLEN Instruction To Identify JUROR COERSION and COERSIVE LANGUAGE.

The Eleventh Circuit Court of appeals and Eleventh Circuit District court using The Same model EXAMINE THE Totality OF THE Circumstances To SEE IF THE Court's Actions CReated a Substantial Risk that ONE OR MORE Jurors Would be Coerced INTO Abandoning Their HONEST Held Belief. The Relevant Circumstances INCLUDE THE Following

A). The Total Length of DELIBERATION.

B). The Number of Times The JURY Reported being Deadlocked And ~~then~~ Instructed THE JURY To CONTINUE Deliberating.

C). Whether any of the INstructions Implied that the Jurors WERE violating Their oath.... OR Acting Improperly by Failing To Reach a verdict.

D). THE Time between THE Final Supplemental INstruction And the JURY's VERDICT.

E). Whether THE Judge Knew the JURY's Numerical split WHEN HE/SHE INstructed THE JURY To CONTINUE deliberating.

IN THE INstant CASE using The Same model approach THE Eleventh Circuit Court of Appeals and Eleventh Circuit District Court USES Addressing THE First Prong IN No Particular Order. UNITED States VS Woodard, 531 F.3d. 1352, 1364 (11th Cir. 2008).

PRONG-A). The Total Length of Deliberation: ~~████████~~
        IN WILKINS CASE THE JURY Began Deliberating at 9:30Am November November 7th 2019 UNTIL

29.

6:47 p.m. Which was 9 Hours of Deliberation after a Six day Trial. Trial Transcript Page 1355, 1381

PRONG-B). The Number of Times The Jury Reported being Dead-locked and Instructed The Jury To continue Deliberating:

In Defendant Wikins Case There Were Two deadlocks on Two of the Counts Reported by the Jury. The Jury Reported In It's Sixth Jury Note They Were deadlocked and all parties agreed That the court Should Instruct Jury To continue deliberating.
Which is The First of Five Instructions, and the First of Two deadlocks. To premature For ALLEN Instruction Trial Transcript # 1380 16-25; (1381 1- 9.) **First DEADLock First INSTRUCTION**

LINE. 16 The Court: All Right, I'm covering For Judge Altman We Have a Note From the Jury. It says," WE ARE NOT UNANIMOUS ON Two of the Counts. We are unanimous on five The courts Signed by Kirby Moneshine, What's the parties position as to what the Response should be?
Mr. McMillan: I would ask Them to Keep Deliberating your Honor, I don't Think that we're quite to the point of AN ALLEN Charge YET.
LINE. 25 The court: How long Have they been deliberating?
Trial Transcript (1381 1-9)
LINE.1 Mr McMillan: Since NINE Am This morning
The court: MR. Chapman, whats your Position?
Mr. Chapman: I AGREE with that your HONOR actually, I Think They Started actually Deliberating at About 9:30 Am because There was a Computer problem, but Right Around NINE 9:30 Am. So I would agree with Mr. McMillan
The court: So I will write on the Note: Please continue deliberating and send it back? Is that agreeable to
LINE.9 Everybody?

30.

Three Hours Later After Jury Note NUMBER SiX
Announcing To The court THEy WERE DEADlocked.
And The First of FivE Instructions to continue to
DelibERate, To BREAK THE DEADlock,
At Approximately 4:48 pm November 7, 2019, AFTER
THE RECESS; THE JURY SENT It's seventh Jury NoTe
Asking questions about Count-3. And was Instructed
To CONTINUE To deliberatE ON Count-3.
Also could mEAN To CONTINUE DelibERating ON DEADlock,
as well.
In which It would bE <u>a sEcond Instruction</u> to contINUE
DElibERating ON DEADlock.
And The <u>First Instruction</u> to continUE To delibERAtE
ON Count-3.     Trial Transcript (1382 6-16); (1385 10-11).

Line. 6 ( The JudgE DimiTROuleaus ENtER courtRoom)
       THE Court: PlEASE BE SEATED
       all Right, WE'RE back on thE RECORD
       counsels are present mr. wilkins is pRESENT
       <u>WE HAVE ANOTHER NotE From the JuRY, WE HAVE questions</u>
       <u>about Count-3 part(A) and(B)</u> Is it possible to givE A vERdict
       without specifying which wEApon OR If it was "A" OR "B"
       It sEEms the ANswER to that is "No".
       mc millan: Thats coRRect your HoNOR, the Have
       To bE unANimous about ONE
Line. 16 mR. Chapman: I AgREE,

              Trial Transcript (1385 10,11)
          SEcond Instruction on DEADlock to continue
                         DElibERating.
             First Instruction on Count-3   A and B
                     To continuE DelibERating.
Line. 10 So with that I'll ask you to REtiRE and continue
Line. 11 <u>your Deliberations.</u>

                    31.

Approximately ONE HOUR, TEN minutes Later Totaling more Than Four hours LATER. And AFTER, Two INstructions To continue Deliberating afTER SEventh Jury Note and First Dead lock.

The Jury SENDS It's NOW Eighth Jury NOTE at 5:56pm ANNOUNCing THey are still Deadlock ON Two Counts. A-modified ALLEN Charge is given To the Jury, with THREE more Instruction To Continue To Deliberate After modified ALLEN charge. Totaling Five Instruction To contiNue to deliberate along with COERSIVE Comments Embedded within the Instruction, giving the Jury No choice But to convict, 40 minutes After multiple Instructions To contiNue Deliberating on Dead lock.

Trial TranScript

1386 1-14 modified ALLEN charge
1388 7-15 Third Instruction continue Deliberating
1389 22-25 Fourth Instruction continue Deliberating
1390 1-3 fifth Jury Instruction continue Deliberating on Deadlock

Tr. P. 1386 1-14 (ALLEN Charge Given)

LiNE. 1  WE Have ANother NOTE From The Jury "all EvidENCE Has BeEN REvieWED, and WE aRE still Completely at a deadlock ON Two Counts"
whats counsel position about what WE should do at This point?
MR. McMillaN: Your HONOR, Its the GovERNMENTs position that at This JunctuRE, Having spent a Considerable Amount of TIME deliberating, Having been advised ONCE ALReady That They WERE deadlocked, Having InstructEd them to please consider or deliberate ... To please continue deliberating And still Having now Some Several Hours Later, Indicated that they ARE Remain IRRETRIEVably dead locked ON Two Counts, That it is Time For the court to utilize the modified ALLEN Charge And
LiNE. 14  WE Respectfully Request the court do so,

32.

Trial Transcript 1388 7-14

**Third** Instruction To continue Deliberation on Deadlock **After**
Allen Charge With Additional Coersive Comments.

Line.7  I Have Another Note From the Jury. All Evidence has
Been Reviewed, and we are still Completely at a deadlock on two
counts
I'd like to give you another Instruction,
members of the Jury. I'm going to ask that you
continue your deliberation IN AN Effort to agree on a verdict
and dispose of this case, And I HAVE A FEW Additional Comments
I'd like For you to consider as you do so
Line.15 This is an Important Case. The Trial Has been,

Trial Transcript 1389 22-25

**Fourth** Instruction To continue Deliberation on Deadlock
After modified Allen Charge

Line.22  I Now ask that you Retire once again and continue your
Deliberations with additional Comments In mind, Apply
Them IN Conjunction With all the Other Instruction I Have
Line. 25  Previously given to you ... or Judge Altman previously gave To

Trial Transcript 1390 1-3

**Fifth** Instruction to continue Deliberation on Deadlock
After modified Allen Charge

Line.1  you
Line 2  and with that I'll ask you to Retire and continue
Line. 3  you deliberations

Defendant Wilkins Argues He Was prejudice and Deprived
of a Fundamental Fair Trial, by The courts multiple Ins-
Instructions To The Jury To continue To deliberate After
Two Deadlocks, as Such coered The Jury Into

33.

Reaching a verdict, with Five Instructions to break a deadlock and Reach a unanimous verdict is coersive the more times the court Instructs the Jury to continue deliberating the greater the **COERCION** United States vs Fossler, 597 F.2d. 478, 485, (5th cir. 1979) (Number of times Jury Instructed to continue Deliberating to Break deadlock is Coercion). Brasfield, 272 U.S. 448, 450, 47. S.ct. 135-36 71 L.Ed. 345 (1926) (multiple Instructions to continue deliberating to break deadlock and Placate the Judge is coercion). Satisfying Prong "B" of the Eleventh circuit model Approach.

**PRONG-C** Whether any of the Instructions Implied the Jurors were acting Improperly by Failing to Reach a Verdict.

Defendant Wilkins Further Argues the District court Judges 5 Instructions To break a deadlock and additional comments were Embedded with Prejudicial and coercive Language Deprived Him of a Fundamental Fair Trial when He committed a Kesley Error. Accusing the Jurors they were acting Improper If they Fail to Reach a verdict, and aiming His comments at Jurors Intelligence, competence, and Honest Held beliefs and Not the Evidence. "Comments Not upon the Evidence, but Reflecting on the Jurors, are Not Permissable" Kesley, 47 F.2d. at 454 (1931).

Comments making Jurors Feel Like They Have No other Choice But To find Wilkins guilty And If they Don't. They Are committing a Grave Dishonor To the public. Trial Pages 1388 17-19.

34.

Trial Transcript 1388 17-19

LINE. 17  If you Fail To agree on a
VERDICT, The case will be Left open and may Have to be Tried
LINE. 19 again (Emphasis Added)

District court Judge Dimitrouleas Comments Aimed at
Attacking Jurors Beliefs to coerce them To give up
Their Honest Held Beliefs Not to Find wilkins guilty
By Twice stating, "THERE'S NO REASON to believe,"
Attacks the Heart of a Jurors Reason to convict or
Not to convict beyond a Reasonable Doubt. Their belief
Of what They believe deeply In their Heart about the
Evidence And Choose Not to convict and cause A Deadlock is
A Jurors honest Held belief, and The Judges Instructions
To Break The Deadlock, with coercive Language Embedded
Within the Allen Instructions, along with Five Instructions
To convict under THE Semblance "To continue To deliberate"
To coerce The Jury From their Honest Held beliefs About
The case is Coercive. Trial Transcript 1388 20, 24b, 25A

LINE. 20  cost to both Sides, and THERE'S NO REASON to believe
LINE. 24(b)  THERE IS NO
LINE. 25(A)  REASON believe (Emphasis Added). GREEN VS UNITED
States, 309 F.2d 852, 854 (5th Cir. 1962), United States VS
Davis, 779 F.3d 1305, 1312 (11th Cir 2015).

Judge Dimitrouleas Instructions were Embedded With
Coercive Comments, To Induce Hold-out Jurors to agree.
And "IF Not," It would Reflect upon Either Their Intelligence
Or Integrity, and Competence. Trial Trans. 1388 Line. 25(B);
Trial Tran 1389 Lines. 1-3.

35.

# Trial Transcript

1388 Line. 25(b) That The case could ever be submitted to 12

1389 Line. 1 people more conscientious, more impartial or more competent to

Line. 2 decide ... or that more or clearer evidence could be

Line. 3 Produced.

Kesley vs United States, 47. F.2d. 453 453-54 (5th cir. 1931) (The court Reversed Holding That comments Not upon the evidence but Reflecting on the Jurors, are Not permissable. The Kesley court Further Explained that "No Juror should be Induced to Agree to a verdict by a Fear That a Failure So to agree will Be Regarded by the public as Reflecting upon Either His or Her Intelligence or His or Her Integrity")

District court Judge Dimitrouleas was Not Present during defendants Entire Trial. So He Has limited or No Knowledge of The Evidence That was presented. He came In as an Alternative In the Early part of Deliberations Approximately 1pm November 7, 2019. The Judges Instruction In this context constitutes A plainly In correct Statement of the Law to the Jury. Stating, "That This case could Not be Submitted to 12 people more conscientious, more Impartial, or more competent; To decide it or that more or clearer Evidence could be produced." Instructing The Jury to convict; because they are the only ones that could Stop this Broken malFunction of a Deadlock System, Leaves The Hold-out Jurors No other option But to convict. United States vs REY, 811 F.2d. 1453, 1460 (11th cir. 1987) ( The Jury Trial System Has not malFunctioned when the Jury cannot Reach a verdict ONE of the Safeguards against the conviction of Innocent Persons Built Into the Criminal Justice System Is that a Jury may Not be Able to Reach a Unanimous verdict).

36.

To Avoid a mistrial It's as If The District Court Judge Was Saying To the Jury and Hold-out Jurors." Your Smart and Intelligent. Don't make a stupid Decision with Not Finding Him guilty. It's gonna make the Criminal Justice System Look Bad If you Fail to Find Him guilty. Because WE spent all This Time and money ON This Case and To Not Find Him guilty, will Cost Tax payers more money To Retry This costly Case Again, and you will be the Blame and the Public will question your Decision about what you based your Not guilty verdict UPON.

"Theres NO REASON to believe," He's Not guilty. I will say it again, "THERES NO REASON to believe," He's Not guilty." IF you are Holding ONTO that HONEST belief. The District Courts COERCIVE Instructions put additional pressure ON Jurors Especially, Hold-out Jurors, by continuously Instructing Them Five Times To KEEP Deliberating AS IF To Brainwash Them, Into Reaching a unanimous verdict. His additional comments THAT HE double down on by specifically Instructing The Jurors and Hold-out Jurors, Twice To Take additional Comments Into Consideration, Is COERCIVE Pressure ON a Juror To Abandone Their Honest Held Belief. Satisfying PRONG-C  GREEN vs UNITED States, 309 F.2d 852,854 (5th Cir. 1962) ( Pressure becomes coercive when The actions of the Court Result In a "minority of Jurors... Sacrificing Their Conscientious Scruples For the sake of Reaching agreement.)

PRONG-D    The Time between The Final
Supplemental Instruction and
The Jury's verdict

37.

# Trial Transcripts

Tr. P. 1380    1:49 pm Thursday November 7, 2019
Judge William P. Dimitrouleas covers
For Judge Altman. Jury Note #6
Announcing To Court First Dead-Lock
ON Two Counts Signed by Foreman
Kirby Monestime, To premature For
modified Allen Charge

Tr. P. 1381    Instructed Jury To Continue Deliberating
Sent back written on Jury Note From
1:56pm until 4:48pm.

Tr. P. 1382
After Recess at 4:48pm. Judge Enters
Court Room With Seventh Jury Note Question
about Count Number #3 part A and B. Second
Instruction To Keep deliberating on Dead lock
and Weapons Charge.

Tr. P. 1386
Recess Taken at 5:02pm until 5:56pm, After Recess
5:56pm Jury Note Number Eight. modified Allen
charge given along with additional Coercive
Language.

Tr. P. 1388 Lines 11,12;   Tr. P. 1389 Lines 22-25
Instructions To Keep Deliberating In conjunction
with additional Comment That Were Coercive.

Tr. P. 1390 Lines 2,3
8 Jury Notes, 2 deadlocks, 5 Instructions to
Keep deliberating to Break Allen Deadlock
Recess Taken at 6:02pm. Immediately After the 5th
Supplemental Instruction was giving with Coercive Language.
40 minutes Later Defendant was Found Guilty on Counts
1,3,6,7.

38.

THE SUPREME COURT IN Deeming a verdict Coercive
Focuses ON How quickly The Jury UNANimously agreed
ON a verdict after THE Courts Last Supplemental
Instruction and action. After THE COERCION of multiple
Instruction To KEEP Deliberating with coercive Comments
Embedded within The Instruction THE Jury Returned a
verdict of Guilty Within 40 minutes. Suggesting Wilkins
verdict was COERCED. Lowenfield 484 U.S. at 240,
108 S.ct. at 552. ("WE are mindful that the a Jury
That Returns It's verdict immediately after Receiving
a Supplemental Instruction suggest coercion"), Woodard,
531 F.3d at 1364 ( IN assessing whether the charge
was coercive, WE CONSIDER the Language of the charge
and the Totality of the CircumstanceS UNDER which it
was delivered, eg.... The Amount of Time between the
delivery of The charge and the Return of the Jury's
verdict), Fossler, 597 F.2d at 485, (Finding coercion
where Among other things only oNE hour after the second
Allen charge was sent to the Jury a guilty verdict was
Returned). THE COERCIVE Circumstances That Led
To Wilkins Forty minute verdict, UNDERMINED THE
The Fundamental Fairness of The Trial and the
Reliability of The verdict. THESE Circumstances
ENTITLE Defendant Wilkins To A NEW Trial.
Prong-D satisfied.

PRONG-E   Whether THE Judge KNEW The Jury's Numerical
           Split when HE Instructed The Jury to
           continue Deliberating:
        IN THE INSTANT CASE THE Record is UNClear
        Whether District Court Judge Dimitrouleas Knew of
        The Jury's Numerical Split. However the Supreme

39.

Court Has Exercised It's Supervisory Authority To prohibit Federal Judges From Inquiring how Dead locked Juries are Split. The Court Has Explained That Inquiring about the Specifics of the split "Serves No useful purpose," Tends to be coercive and can Rarely Be Resorted to without bringing to bear ... An Improper Influence upon the Jury. Brasfield vs United states 272 U.S. 448, 450, 47 S.ct. 135, 135-36, 71 L.Ed 345 (1926). Prong - E Satisfied

# IV. Fraud upon The Court

Defendant Christopher wilkins Seeks Relief From Judgment on Counts 1, 3, 6, 7. of His Indictment based on Fraud upon The Court Hazel-Atlas Glass Co. vs Hartford Empire Co. 322 U.S. 238 64 S.ct. 997 88 L.Ed. 1250, 1944 Dec. Comm'R Pat. 675 (1944). Pursuant To Federal Rules civil Procedure 60(d)(3).

Defendant Challenges The District Judgment Entered Following Jury Trial Contending That His Judgment was product of Fraud upon The court and Should be vacated, Set Aside.

60 d. 3 Hazel-Atlas Action Requirements For Relief Fraud on the Court Has been Narrowly Interpeted as contemplated by Rule 60(d)(3). Fraud on the court Should Embrace only that Species of Fraud which does or Attempts to Subvert the Integrity of the Court Itself or is a Fraud perpetrated by officers of the

40.

Court so that the Judicial machinery cannot perform in the usual manner it's impartial task of adjudging cases that are presented for Adjudication and Relief should be denied in the absence of such conduct ZAKRZEWSKI vs mc Donough, 490 F.3d 1264, 1267 (11th cir 2007), DemJanJuk vs petrovsky, 10 F.3d. 338, 352 (6th cir 1993). For a defendant to obtain Relief pursuant to 60(d)3 Hazel-Atlas Action, He must satisfy ONE of THREE Prong Requirements.

ONE. Bribery of a Judge OR

Two. Bribery of a Juror OR

**THREE.** Fabrication of Evidence by an officer of the court. In united states vs HERRING, 424 F.3d. 384, 390 (3rd cir 2005) Herring did Not Specifically delineate the officers that fall within the officer of the court Rubic it did make clear that Lawyers were included Id. at 390. However the Supreme court in Cammer vs united states, 350 U.S. 399, 405, 76 S.Ct. 456, 100 L.Ed. 474 (1986), defined clearly who falls within the Rubic meaning of officer of the court by stating,(that only individuals who are intimately associated with the operations of the court qualifies as officers of the court.) Defendant wilkins argues his 60.d.(3) Hazel-Atlas Action Satisfys and falls within Prong Number three, Fabrication of evidence by an officer of the court. He further asserts that u.s. Attorney John mcmillan and AT.F Agent Sara T. connors and/or it's agents committed

41.

On of the most Egregious misconduct against the court Itself. These two officers of the court Deliberately Planned and carefully orchestrated and executed an unconscionable scheme to defraud the court, and the Judicial machinery By knowingly with Reckless Disregard For the Truth and Integrity of the Judicial machinery Procured False And Fabricated Testimony's as Evidence, That Improperly Influenced and deceived the Judicial machinery. The Grand Jury Twice, obtaining an Indictment and a Superceding Indictment That was False and Fabricated. Defrauding The district Court and by deception Having The court Procure False and Fabricated Jury Instructions based upon Crystal Sweeting and Sheldon Armstrong's Fabricated Testimonies along with Defrauding the Petit Jury and obtaining an unjust 17½ year Sentence by Fraud upon The court. Rozier vs Ford motors Co. 573 F.2d. 1332, 1338 (5th cir. 1978), United States vs Herring 424 F.3d. 384, 390 (3rd cir 2005).

Defendant Wilkins Further contends U.S. Attorney John McMillan and ATF Agent Sara Connors used undue Influence By Coaching Crystal Sweeting and Sheldon Armstrong To manufacture, Fabricated and False Testimony's To these different Legal Divisions of The Judicial machinery, In Exchange For Their cooperation as Informants For Dismissal of multiple Serious Felony charges. That Carry a Life Sentence In Prison. In Support of His Fraud upon the Court Hazel-Atlas Action 60(d)(3). Wilkins Includes The Following :

42.

A). Crystal Sweeting was charged by Information In the Southern District of Florida on June 22, 2018 Case # 18-8301-DLB For:

18 U.S.C. 922(d)(1) 924(a)(2) Knowingly Transferring Ammunition To a Convicted Felon.

18 U.S.C. 922(g)(1), 924(a)(2)(2) aiding and abetting the Possession of a Firearm and ammunition by a Convicted Felon on or about the date of July 13, 2017, In Palm Beach County. Which was Later Superceded June 26, 2018, Adding Two Additional Charges,

21 U.S.C. 841(a)(1), 841(b)(1)(c), 846 Conspiracy to distribute Controlled Substance (cocaine),

18 U.S.C. 924(c), 2 aiding and a betting Carrying of a Firearm In Connection with drug Trafficking offense and Possession of A Firearm In Furtherance of a drug Trafficking offense.

B). Sheldon Tavaris Armstrong was charged by the state of Florida Fifteenth Judicial Circuit In and For Palm Beach County Florida Case # 50-2018-CF-004561-AXXX-MB Count-1 Possession of Cocaine with Intent to Sell 893.13 (1A),

Count-2 Possession of marijuana In Excess of 20 Grams 893.13 (6A), In which this New Case violates His Federal Probation and Enhances His Federal Sentence once again. If Found guilty For The Cocaine Charge He Faces 15 to 25 years In Prison at the age of 35. Upon Release He would be 60 years old, which In essence is a Life Sentence.

The Record is unEquivocally clear, Looking at the Facts That U.S. Attorney John McMillan and FTA agent Sara O'connors used Threats and Intimidation To coach Creystal Sweeting to

43.

Fabricate and make False Statements using multiple Felony charges To Threaten Her with a LIFE SENTENCE In prison as Leverage Forcing Her To manufacture HER Testimony.

### Trial Transcript of Being Threatened

Tr. 804

Line. 22    Q. on Page 8 He Said, "To you Chris said to you" oh man!
            Go See a Lawyer, They Threatening you, Fuck No"
            **NOW** when He said, "They you Understood that to mean
Line. 25    The prosecution"

Tr. 805

Line. 1  ANS.  Like Sara Connors and the Government
         Q.    Mr. McMillan
         ANS.  Yeah
         Q.    and Chris was Telling you go See a Lawyer Right?
         ANS.  Correct.

         Q And that's what you Eventually did. You got A Lawyer.
Line. 7 ANS, Yeah.

After Two years of Scaring Her and threatening crystal Sweeting with prison, and she finally Submitted to Them. They began Coaching Her To make Fabricated and False Testimony's against Wilkins at the Grand Jury, Requiring Her to Have A Combined 76 prepping and coaching meetings        Trial Transcripts
                        **of** Coaching meetings

Tr. P. 810 6-15
    Line. 6 Q Let me ask you, how many meetings have you Had
            Just with The Agent, Not with Mr. McMillan, But Just
            The Agent.

44

ANSWER. A Lot

Q.  MORE THAN TEN?

ANS. LIKE 170 -- it was a Lot, BECAUSE SHE moved me at the Time.

Q.  But WHENEVER -- how many meetings did you have WHERE YOU WERE Talking about the case?

ANS. LIKE TEN or -- it was a lot.

Q. and How many, with mr. mcmillan?

LINE.15 ANS. LIKE SIX -- Five or Six.

TR. P. (811  10-15)

LINE. 10  Q. You Had several meetings with the Agents Special Agent CONNORS about this case Right?

ANS. YEAH

Q and you Had Several meetings with mr. mcmillan about this case Right?

LINE. 15 ANS. CORRECT

HowEver THE RECORD REFLECTS AFTER Two years and SEventy plus meeting Coaching with Threats of a Life Sentence Held up To Her Head LIKE A GUN. THE Truth Constantly slips out. That DEFENDANT wilkins KNEW Nothing About A GUN and was Convicted, because of Fraud on THE court orchestrated and carefully PLANNED by U.S. ATTORNEY John mcmillan and agent Sara CONNORS.

TR. P. 738  LINES. 13-25

LINE. 13  Q. and You First Testified IN front of that Grand Jury on October 31, 2017

ANS. CORRECT.

Q. MORE THAN Two years ago?

ANS. CORRECT

45.

QUESTION: AND IN that two years you've NEVER BEEN PROSECUTED For perJury For Lying to that Grand Jury Right?

ANSWER. CORRECT

QUESTION. You also Told that Grand Jury that He possibly got that GUN FROM GRACE HensLey Right.

ANSWER, YEAH

QUESTION. So You First of all, mentioned Chris wilkins Sister And
LINE, 25  THEN you mentioned Grace HensLey Right.

---

Tr. P. 739  1-10

LINE. 1  ANS. YES

Question; But you Knew, according to you, that HE Didn't get that GUN FROM GrAce Hensely?

Question; He got it FROM You

ANS. YEAH

Question: And that was also a LiE that you Told that to THE FirST Grand Jury.

ANSWER: CORRECT

Question: After you Promised to Tell the Truth

ANSWER: CORRECT

Question: And you'VE NEVER been prosecuted For that LiE

ANSWER. No,

---

FROM Crystal Sweetings own Testimony THE RECORD Continues to ReFlect an ON-going Well Thought-out Scheme. That AFTER DeFrauding THE Grand Jury Twice and obtaining a Fabricated and manu-Facture SuperCEding Indictment, McMillan and SarA connors Continued Their Scheme To Now, Deceive THE JudiCial machinery. THE District Court, IN order Procure a conviction by Fraud,

46,

United States Attorney John McMillan and A.T.F agent Sara Connors plan to Fraud The District Court Nearly was Derailed during The motion For Continuance Filed The Day of Trial by The Defense, When John McMillan Attempted to Blind Side the Defense by Turning over the Last of the giglio material one day before Trial of, The Transcripts of The Second Grand Jury That He Had In His possession Since June 5, 2019. Nearly 4 month.

John McMillans attempt to Blind Side the Defense almost Derailed His plans. District Court Judge stated Withholding That Giglio material Last minute as a ploy to Hinder the defense was Jencks or Brady violation. However, McMillan Argued His position that it's Not a Brady. Had The District Court Ruled it was a Brady violation, He would Have been Unable to use The Fabricated Testimony of Crystal Sweeting Completely destroying His and agent Connors plan to Defraud The court, That They Had been Carefully Planning and Crafting For Two years with 70 plus Rehearsal meetings with Crystal Sweeting.

Motion For Continuance
Trial Transcript

Tr. P. 104 5-25

Line 5 The Court: So Mr. Chapman is saying that you've Been In possession of Giglio material starting In August of This year, which is Two month ago, I Suppose, and That it wasn't Turned over, That it's Not Jencks Because it's statements of a witness where In she admitted That she was Lying, and it should have been Turned over In August, But it was Turned over, I guess. Yesterday at 4:30 pm is any of that True?

47.

mcmillan: I turned the material over at 4:30 pm Yesterday, Your Honor, That is True, However Theres been No Brady violation here, I Think, actually This is an Allegation of a Brady violation, Not Giglio.

Court: I Think It's Giglio, Because he's saying that theres admittedly. I Haven't seen the Testimony, So I'm Rely on His motion, and thats why I'm asking you whether it's True - he Say that the Grand Jury Testi mony of ms. Sweeting from August 29th, I Think of 2019.

Defense Chapman: That's correct.

The Court: You went over with Her, her previous First Grand Jury Testimony, For like The First half of the August 2nd Grand Jury Testimony. and There were seven Instances He says alot, I don't Know How many, He doesn't say but he says

Tr. P. 105 Line. 1 There were alot of Instances In that Second Grand Jury Testimony, while you were going Through— and I Apologize, I Seem to Have Lost my voice, where you were going Through her First Grand Jury Testimony with her where She admits that the things she said In the First Testimony were False, which would be Giglio Not Brady.

mcmillan: Yes your Honor, she certainly did that, and defense Counsel Has been well aware of that, This Is No Brady or Giglio violation, I Turned over Her Grand Jury Tran script where her False statements were made with the Governments Response To standing discovery order, Docket Entry 29, on June 5, 2019.

48.

THE COURT: But did you make clear that the statements In that First Grand Jury Testimony were False at any point Before Yesterday?

The District court made a Glaring observation and stated on the Record Supporting Coercion. That Crystal Sweeting was Coached Into Fabricating Her Testimony when the Judge Stated, "She may Have been Telling The Truth That will kins didn't Know about the Gun". Trial Trans. 13. at 19-25,

Exposing what mcmillan and agent Connors Had been doing Behind the SCENES For Two year Coaching. In Addition 9 months After Crystal Sweetings First Grand Jury Testimony This Gun mysteriously appears, while defendant wilkins was already In Federal Custody For Probation violation September 28, 2018. Strongly Suggesting The Gun was Planted.

(TR.P.13 LINES, 19-25); (Trial Page 14. LINES 1-4).

TR.P.13 LinE. 19 maybe she was Telling the Truth, That First Time, I'm Sure That's going to be part of your Cross. Maybe It's True that she got it From Grace Hensley. And mr. wilkins knew Nothing about it. maybe Thats the Truth and the Second Time, when the agent got to questioning her, and she want to Curry Favor with mr. mcmillan and whatEver Now she starts to Lie about mr. wilkins Knew,

Crystal Sweeting Has NEVER been Formally Charged For the Four Serious Felonys That was being Held over Her Head as Facing a Life Sentence. In Exchanged For Her Fabricated and Manufactured Statement, Coached by mcmillan And Connors.

49

SHELDON Armstrong
"Go to Informant"

These Two Officers of the court U.S. Attorney John Mcmillan and agent Sara Connors who are Intimately Associated with the operations of the court, Continued to use their manipulative Tactics To put the Finishing Touches on their Scheme, by going to their "Go To Snitch" that they Apparently Have worked with In The past. Sheldon Armstrong who would Say or do anything, EVEN IF That means manufacturing an Entire Event, To Get Government Assistance on His state Charge. He Had NO Knowledge of Wilkins CASE, But when Offered a deal To Testify In Exchange For Assistance on His state CASE, He Had all The Answers That He didn't Have before Including The GUN.

Trial Transcript 1012 LINE. 23-25
1013 LINE. 1-3

Starting with The District Judges OWN Statement about Sheldon, Armstrong.

Tr.P 1012

LINE. 23 Q The court: Come Sidebar. I Think WE'VE Established
That This Guy,

Tr.P. 1013 LINE 1. Lies He Lies, alot and He only cares about Himself, How much
2. LONGER ARE WE going to go Through, Every Statement He EVER
3. made? WE'RE going to be HERE until 2025,

Tr.P. 968, LINE. 2-11

LINE. 2 Q. mr. Armstrong: It was on MAY 10, 2019, That you met
with special agent Connors And special
Agent Goetz Right?

ANS. I don't Know the Exact date, But I Know I was In
I was IN THE Box and when THEY Just Came.

50.

Question: it was at Palm Beach County Jail?

ANSWER: yeah THEY Came out of NO WHERE, yeah I was IN the BOX
IN Palm Beach County Jail.
and THEY Just CAME.

Question: And you were IN the Box at Palm Beach County Jail,
meaning you WERE IN Solitary confinement?

LINE.11 ANSWER: YES

Trial P. 965 at 8-18

LINE.8 Special agent Connors?

mr. Armstrong's ANSWER: It NEVER happen until After I made it to the
County. This happen way After I
made it to the County, WHEN SHE CAME, this NEVER
I WASN'T EVEN .. umhum, I NEVER got a visit
until THE END of this about I was about to get out
of the County. AND THEY Came and visit mE
I ain't NEVER was part of This

Question: Where you come From? you said you went From..

ANSWER: I was IN Federal, I was IN Federal on a Violation I
WASN'T EVEN ON this.

TR. P. 975 at 9-17

LINE.9 Q. But Because you didn't want to Have anything to do with it
you lied to THESE Federal agents Right?

Armstrong ANS. Why I'm wanna Tell THE Truth? when Why I'm wanna come
And Tell them That Hey, this that and got INCRIMINATED
with it? why would I want to be~ why would I want to
get INVOLVED? I would do Any thing

51.

Question  You Just said why would you want to Tell the Truth Right?

Armstrong ANS.  No, I'm saying why could I want to get Involved With a Situation That I don't got Nothing to do with?

Tr. P. 1025 at 1-9

LiNE. 9 Q  Yeah you could liE HERE Today, But If mcmillan Thinks That it's the Truth, He could still call ThE prosecutor For you Right?

Sheldon ANS.  He AlReady Called — The Call That He was gonna Do He been Called, I Just in It's No — I didn't get No Benefit From it No Benefit

Q  The calls AlReady Been madE

Sheldon ANS.  It's the Call For — I didn't get No Benefit, though, No Benefit I didn't get Nothing.

Tr. P. 1037 at 8-18

LiNE 8. Q  This CocainE IN GovernmeNts Exhibit 13, you Know That was Found IN GRacE Hensleys home? Did you Know that?

Sheldon ANS.  NO

Que.  you didn't know It was Found IN heR closet

The court :  PResumably Not If He didn't Know the First Two Things, PResumably He didn't Know the Last one

Sheldon ANS.  I ain't EVEN Know He got caught with crack, I Thought It was a DomestiC I ain't Know about No CRACK No GuN, OR Nothing

ContinuE NEXT pagE

52.

TR: P. 1033 at 7-17

LINE.7 Q. So you like Everybody Else Apparently?

Sheldon ANS. yeah WE all LIE SomeTimes

Question. LIES when you NEED to Right?

Sheldon ANS. WE all LiE (YEAh)

Q. OKAY, But you liE

Sheldon ANS. I will liE SomeTimes, you too

Q. Now you Know That IF it hElps you with your
other CASE That IF you CaN LIE aNd get
Away with it to this Jury

Sheldon ANS. yEAh

TR. P. 1041 at 14-19

Q Do you Remember mr. chapman Asking you about this Statement
That you Supposedly made IN That First meeting, where it Says
I'll do ANY Thing They ask me to do?

Sheldon. ANS, YES

Q and Do you agreed you said that

Sheldon ANS. YES

That statement From The "Go to SNitch" sheldon
Arm strong Says It all. "He will do ANything
U.S. Attorney John mcmillan and A.T.F. Sara connors
Tell Him to do." And it ONCE Again EXPOSES John

53.

mcmillan and Sara Connors carefully crafted Scheme to use Snitches That Have NO CONNECTION To Any Event, But will be willing To manufacture a Event IN order to get The Benefits. The Record is unequivocally clear, That THESE Two officer of the court U.S. Attorney John mcmillan, and A.T.F. Agent Sara CONNORS Orchestrated This Entire Plot to Defraud The District Court with malIntent and an UNCONSCIONABLE Scheme with, Coaching Crystal Sweeting For Two years with 70 plus Coaching Sessions PREPPING Her To Fabricate HER Grand Jury Testimony Not ONCE but TWICE. INFLUENCING The Grand Jury decision To TWICE procure ███ A Fabricated Indictment as well as a SuperCeding Indict-ment. This UNCONSCIONABLE Scheme Caused a dominoe Effect To The Judicial machinERY Causing Fabricate Jury Instruct-ions To be PROCURE AN Illegal 17 year SENTENCE by Improperly INFLUENCING The Petit Jury. ROZIER 573 F.2d at 1338 This UNCONSCIONABLE Scheme Obstructs and ImpedE THE Judicial machinERY From PerForming IN It's usual manner It's Impartial Task of adJudging cases that are presented For AdJudication. ZAKREWSKI, 490 F.3d at 1267.

The SECOND Grand Jury was unable To be Impartial and adJudge Defendant Wilkins Case, That was before It IN It's usual manner. BECAUSE it was being DECEIVED by Fabricated Testimony. The Grand Jury's usual manner is Hearing Sworn TruthFul and HONEST Testimony's

54.

From a witness Accept it, and Rely upon it as Evidence, and make a decision From that Testimonial Evidence, And Issue A True Bill Indictment, Not A Fabricated bill Indictment. Had The First and Second Grand Jury Learned it was being deceived by Fabricated Testimony From crystal Sweeting who was Coached To Fabricate and manufacture Her Testimony By United states Attorney John mcmillan and A.T.F agent Sara Connors, It would Have Not Issued a Indictment or a Superceding Indictment That was Fabricated.

Therefore The Judicial machinery The Grand Jury was obstructed From It's usual manner of adjudging Defendant wilkins Case Impartial with Integrity and Issuing a Superceding Indictment.

The Supreme Court In mooney vs Holohan, 294 U.S. 103, 112, 55 S.ct. 340, 79 L.ed. 791 (1955), made It Clear "That deliberate deception of a Court by Presentation of False Evidence is Incompatible with Rudimentory demands of Justice." This was Reaffirmed In Pyle vs Kansas, 317 U.S. 213 63 S.ct. 177, 87 L.ed. 214 (1942); Napue vs Illinois 360 U.S. 264, 269, 79 S.ct. 1173, 3 L.ed. 1217 (1959). The good or Bad Faith of The Prosecution Has No bearing on due process Inquiry. Whether The Non-Disclosure or the Use of Perjured Testimony was a Result of Negligence or Design, It is The Responsibility of The Prosecutor. The prosecutor is The Spokesperson For the Government. Since The Investigating officers are part of the prosecution, The Taint is No less If they Rather Than The Prosecution, are guilty of the Non-disclosure. United States vs Buchanan, 891 F.2d 1436, 1442 (10th cir 1989) The Supreme Court Has also Held That It's a violation of Due Process To Convict a defendant based upon False Evidence and the

55.

Government is also Responsible For False Testimony - EVEN IF THE PROSECUTION is UNAWARE OF the Falsity. Giglio vs United States, 405 U.S. 150, 92 S.ct. 763, 31 L.Ed. 2d. 104 (1972). miller vs Pate, 386 U.S. 1, 87 S.ct. 785, 17 L.Ed. 2d. 690 (1967). United States vs Adkinson 08-CR-167-JHP. Docket # 82.

THE Supreme Court IN HAZEL-Atlas, 322, U.S. at 246 made it also clear, That Tampering with The Administration OF Justice IN The manner Indisputably Alleged HERE INVOLVES Far more Than an INJURY To a Single litigant, "It's WRONg against The Institution set-up to protect and Safeguard The Public, Institutions IN which Fraud cannot Complacently be Tolerated consistantly with The good order of Society," Surely It cannot be That preservation of the Integrity of the Judicial Process must always wait upon The diligence of Litigants. The Public welfare Demands That The Agencies of public Justice be Not So Impotent that They must Always be mute and Helpless victims of deception AND Fraud. Hazel-Atlas, 322 U.S. at 246 Vacated. Fraud upon The Court.

Defendant wilkins case is Identical to Two cases Supreme Court case Hazel - Atlas Glass Co. 322 U.S. 238-47. and United States vs williams 2012 U.S. Dist. Lexis 24776 Case No. 97-CR-171 (10th Cir. 2012). In which ONE became Supreme court Precedent and Both WERE Set, aside For Fraud upon The court.

## Governing Principles of A fraud upon the court Claim

Almost all of the Principles that Govern a claim of Fraud on the Court Find THERE GENESIS IN Hazel - Atlas Glass Co. Vs Hart-Ford Empire Co. 322, U.S. 238, 64 S.ct. 997 88 L.ed. 1250 1944 Dec. Comm'R Pat. 675 (1944). IN Hazel-Atlas, IN 1926

An Attorney For Hart-Ford Empire wrote a Fabricated Article with Fabricated Statements within the Four Corners of the Article Giving Hartford Empire credit For The Patent of a machine Known as gob-Feeding a method of Pouring Hot melted glass Into molds, Then Hartford Had the Fabricated Article Filled with Falsities Published In A Trade Journal And Had the Article Signed by An ostensibly disInterested Expert, which Fabricated His Testimony describing The gob-Feeding device as a Remarkable Advance In the Art of Fashioning Glass by machine.

In 1928 Hartford Empire Brought Suit In The District Court For The western District of Pennsylvania charging That Hazel-Atlas was Infringing This "gob-Feed" Patent and Praying For An In Junction against Further Infringement And For An accounting For Profit and damages. The Court Dismissed On Grounds No Infringement Had been Proven. Hartford Empire Appeal. In Their Brief Filed with circuit Court of Appeals, The Attorneys For Hartford Empire, one whom Help Fabricate The Contents within The Four Corners of the Article and It being published, Directed The courts attention To the Article by mr. William Clark Former President of the Glass makers Union? The Reference was Not without Effect. Quoting Small Portions From The Article That Labor Organizations of Practical workman Reconized The gob-Feeding Patent owned by Hartford Empire. The Circuit Court on May 5th, 1932 Held the Patent valid And Hazel-Atlass Infringed, Reversed The district Courts Judgment. At That Time In 1929, where The Article Seemingly Played NO

57.

Important Parts. The Attorney's of Hazel-Atlas Received Information that Both Clarke and one of Hartford Empire Lawyers Had several years previously admitted that Hartford Empire Lawyer was the True Author of the spurious publication. Haze-Atlas Attorney's at that Time ~~attempt~~ Did Not Attempt To verify the Hearsay concerning the Article. After Reversing The Decree of the District Court, Hazel-Atlas Hired Investigators For the purpose of verifying the Hearsay by Admissable Evidence. One of those Investigators Interviewed Clarke In Toledo, Ohio on may 13 and again on may 24. In Each Interview Clark Insisted That He Wrote the Article Fabricating the statements and Testimony's within the Article and would swear to It If Summoned. In the Second Interview The Investigator asked Clarke To sign a statement Telling In detail how the Article was Prepared. Clarke declined Signing Any statement or Affidavit, But would show Records unless Subpoenaed. But continue To Reinforce His Claim of Authorship Asserting he spent Seven Weeks preparing the Article, ~~And~~ It was Reported and confirmed That Hartford Empire Lawyers Coerced Clarke To Fabricate The Testimony's within The Article For 8,000 dollars. In 1941 all This was Fully Brought To light. Some Twelve years Later, and The Court Reversed Its previous Judgment against Hazel-Atlas. Stating, "Hartfords Fraud Hidden For years. but Now Admitted, Had its Genesis In The ███████ plan to publish an Article For The deliberate purpose of deceiving the patent office, The plan was Executed and The Article was put to Fraudalent use In the Patent Office, Contrary To Law. From There the Trail of Fraud Continued without Break Through the District court and up to the Circuit Court of Appeals. We Reverse, After

58.

discovery of fraud Relief will be Granted against Judgments █████ Regardless of the Term of their Entry. Hazel-Atlas at 244.

Williams Case, In 1997 Jeffery Williams was Arrested and later Pled guilty In 1998 To Federal drug and Fire Arms violations and was Sentenced to 420 months. Defendant Has Sted Fastly Attempted to withdraw his plea of guilty Alleging his plea was Coerced And Based upon Fabricated Evidence and perjured Testimony. From The years of 1998 until 2009, He was Denied by all Courts For Relief. On November 17, 2010, He discovered that at least Five of The Tulsa police officers who Have either been Indicted, plead-guilty, or are awaiting Trial. As a Result of the "Grand Jury Corruption Probe", were Involved In the Investigation of His Criminal Case, and his Arrest. These officers Fabricated, and manipulated The Evidence, Witnesses and Informants Resulting In Petitioners unconstitional Indictment, guilty PLEA, and unJust 35 year Sentence. Defendant noted that if He would Had proof of the officers Corruption, at the Time, He would Have Received a Substantially Lower Sentence as It stands petitioner conviction and Sentence Constitute A Fundamental miscarriage of Justice.

Williams attacked The credibility of Greg Fillmore, one of the Witnesses that DEA Agent Francis Interviewed In determining the Drug quantity attributable To Williams. Williams Contended that officers Henderson, Wells, Gray used Coercion to persuade Greg Fillmore to provide False and Fabricated Testimony In exchange For Dismissal of First Degree murder Charges. The Death of His wife. The Records Established The Charges Filed against ████ Gregg Fillmore For

59

First Degree Murder and the Dismissal of Charges.

Williams Sister Susan Weatherman went to Greg Fillmores House Escorted by a Claremore Police officer and confronted Fillmore claiming she was in possession of statements from various Persons Indicating that he provided Information to police about Jeff Williams, her Brother that was Not True. She Informed Him that she knew He was a False Informant And didn't even Know Her Brother and Fillmore couldn't Identify Williams. She Asked Fillmore To Sign a statement, which He declined. Three days Later United States Attorneys office put Greg Fillmore under Witness Protection to continue To Keep the fraud Covered.

Williams Sister Received Threatening Phone Calls And did Not Know How they got Her phone Number. multiple women Came Forth stating In Sworn Affidavits That Greg Fillmore was Trying to get them To Testify Falsely at a different murder Trial because officers wanted the person to get the Death Penalty, and To Set-up people In exchange for The murder charges of His wife to be dismissed.

 Since the Denial of williams motion at Least one of the Police officers Involved In His Arrest Has been Convicted on Eight of 53 Counts. Count #45 In The Indictment Charged officer Jeff Henderson of violating The civil Rights of an Individual and the Remaining Counts Involve Instances of Perjury Related to Count 45.

Further The Williams Court Took Notice That At Least 42 persons Have been Freed from Custody, and Had Felony cases dismissed, or sentence modified, OR New Trial granted In The Aftermath of The Tulsa Police Corruption Investigation. January 17, 2012

60.

MORE Than 12 yEARS Later Williams FiLED A motion to withdraw and Nullify Guilty Plea. The court construed williams motion Properly and liberally as a motion assent pursuant to Federal Rules Civil Procedure 60(d)(3) Alleging A Fraud upon the court, Hazel-AtLAS Glass Co. Vs Hartford-Empire Co 322 U.S. 238, 244, 64, S.Ct. 997, 88 LEd 1250, 1944 DEC. Comm'r Pat. 675 (1944). As A Court Circuit Has Explained, "A decision produced by Fraud on the court is Not IN ESSENCE a decision at all an NEVER becomes Final KENNER Vs Comm'R of INTERNAL REVENUE, 387 F.2d 689, 691 (9th Cir. 1968)

Defendant wilkins case Fits IN with HAzEL-AtLAS and williams case. Crystal Sweeting and sheldon Armstrong both were COERCED ONE with Life Sentence IN PRison, and The other with 15-25 years To Fabricate TestimoNies, To The Grand Jury, District court and Petit Jury IN EXchange For Dismissal of Charges, ORchestrated by U.S. Attorney John Mcmillan and ATF agent Sara Connors, making Both Original Indictment and Superceding Indictment and Counts 1,3,6,7 within THE Four corners of these Indictments Fabricated and False EVidence, That were procured by Fraud upon the court making Both Indictments Void as Fraudulent documents.

Defendant Argues That The District Court must use its INHERENT Authority of the court To vacate His Judgment obtained Through Fraud upon The court.

61.

## Inherent Authority of The Court to vacate Judgment obtained Through Fraud upon The Court

All courts Have The Inherent Equitable Power to vacate a Judgment That Has been obtained Through The Commission of Fraud upon The Court, universal Oil Prods Co. vs Roof Ref. Co, 328 U.S. 575, 580, 66 S.ct. 1176, 90 L.Ed. 1447 (1946). Federal Rules of Civil Procedure 60(d)(3) Contains a Savings Clause That Specifically Provides For the Continuing Existence of This Equitable Power outside and Independent of Fed. R. Civ. 60(b) SEE: Generally Charels Alan wright et al, Federal Practice and Procedure § 2870 (2d Ed. 1995).

The Provision of Rule 60(d) commonly Known as the "Savings Clause" states: This Rule does Not Limit the courts power To Entertain an Independant Action to Relieve a party From a Judgment, order, or Proceedings, or to ~~grant~~ Grant Relief to a Defendant Not actually Personally Notified as provided In Title 28 U.S.C. § 1655 or to Set aside a Judgment For "Fraud upon the court" Described In The Savings Clause is Distinct From Fraud described In Rule 60(B)(3) The LATTER of which allows a Court To Relieve a party of a Judgment upon the showing of Fraud whether, here to Fore denominated Intrinsic or EXTRINSIC or Extrinsic) misRepresentation or other misconduct of an adverse party Further, the Inherent Power of a court to set aside its Judgment IF Procured by Fraud upon The Court is Not Dependant of the Filing of a motion by a party. The Court may Assert

62.

This power. Sua Sponte United states vs Buck 281 F.3d. 1336, 1342 (10th Cir. 2002) citing 11 wright and miller § 2865, at 380, More over, Not only does this court Possess The Inherent Power to consider Such Fraud, the court has a duty to "Fully Investigate" Whether There Has been a Fraud on the court. And [IF SO] To order an appropriate Remedy, whenever Such Fraud Comes to the courts Attention. IN RE M.T.G., INC, 366 B.R. 730, 754 (E.D. mich. 2007), The court which is subject of the Fraud is the Appropriate court to Remedy the Fraud. Hazel-Atlas, 322 U.S. at 247-250. the Investigation as to Whether a Judgment Should be Set aside for Fraud upon The court ... Focuses Not So much In Terms of whether The Alleged Fraud Prejudiced the opposing Party but more In Terms of whether the Allege Fraud harms the Integrity of the Judicial Process Levander Vs Prober, 180 F.3d. 1114, 1120 (9th Cir. 1999) (Fraudulent Evidence Not only deceived The Levanders but because the court Relied on the Corporations deposition, the court itself was deFiled by The perjury and a Fraud was committed on the court as Well).

THEREFORE, DeFendant Wilkins Judgment on Counts 1,3,6,7 Should be vacated Set aside until a Full Investigation Into Allegations of Fraud upon the court is Conducted.

63.

# Ineffective Assistance of Trial Counsel

**V.** Ineffective Assistance of Counsel Failure to move for mistrial and/or object to Courts multiple Instructions to keep deliberating to coerce a verdict from Jury.

**VI.** Ineffective Assistance of Counsel Failure to object and move for a Remmer Hearing After Third party Private communication with Juror and Courtroom security officer.

**VII.** Ineffective Assistance of Counsel Failure to Raise mulplicity Punishment on Counts 1,3,6,7 Due To Inadequate Research.

**VIII.** Ineffective Assistance of Counsel Failure To Raise mental Health Suicide Attempts of Governments Key Witness Crystal Sweeting.

64.

In order For Defendant Wilkins to prevail on His Ineffective Assistance of counsel claim. Wilkins must Demonstrate Both That:

1). Counsels performance was deficient and
2). The deficient performance prejudice the Defense. Strickland vs washington, 466 U.S. 668, 687, 104 S.ct. 2052, 2064 80. L.Ed. 2d. 674 (1984).

Defendant Wilkins Argues Trial Counsel was Ineffective and He was prejudiced Thereby, when counsel failed To move For a mistrial and/or object to the courts multiple Instructions to The Jury after The Jury Indicated That They were Deadlocked Twice on Two counts.

Defendant Avers that The Record In His case Reveals That The Jury Could Not Reach a Verdict on Two Charges against Him. The Jury Indicated on Two Occassions that they were deadlocked. The court gave Five Instructions To the Jury to continue deliberating However before The modified allen charge The Jury Returned And stated That They were deadlocked on Two Charges and couldn't Reach a verdict. Resulting In an Allen charge. Wilkins Further states that He was prejudiced by the multiple charges to the Jury to continue to deliberate After The Allen charge, and the coercive comments Embedded In the additional comments coercing the Jury to Reach

65.

A Verdict. Counsel Error In this Regard preJudiced Him and deprived him of a Fundament Fair Trial.

Trial Counsel Chapman objects to The modified Allen Charge and ask the court to declare a mistrial with Respect To the two Counts The Jury was deadlocked on and Specifically objecting only To the Language Of the Instruction. Which States Tr.P. 1386 (Lines 19-24)

Line. 19 mr.chapman. And with Respect to the modified Allen charge, I Am objecting specifically on the Language of which states that: "If a Substantial majority of you are In Favor of a conviction Is a Reasonable one, Since it appears to make No Effective Those of you who disagree Should Reconsider whether your Doubt)

Line. 24 Impression upon the minds of the others."

Which His objection was overruled. Counsels Failured to object to The multiple Instructions, "Keep deliberating" to Coerce a verdict. And Failing to object to the Coercive Comments by Judge Dimitrouleas; That were additional, that was also Coercive and His Failure to object and move For a mistrial was Not Based upon strategy ~~~~~ Tactical decisions need Rational Reasons behind Them, Hammond, 586 F.3d at 1332 (under The Law of this circuit The question is Not why The defendant's counsel Failed to more For a mistrial. But whether a competent attorney Reasonably could Have decided Not to move For one).

In wilkins case There is No Indication In the Record That counsel's Failure Even to Raise an objection or move For a mistrial ... ~~~~~ For Coercive comments by The Judge and multiple Instruction to Keep Deliberating to Produce a Coerced Verdict, was a product Of any Tactical Forethought and

66.

It can only be speculated as to the REASON FOR not Objecting Jackson vs Herring, 42 F.3d. 1350, 1360 (11th cir 1995). Perhaps Chapman thought that any objection would be meritless. If so He was really wrong. Or perhaps He didn't see the obvious signs of COERCION or didn't know That a COERCED verdict was UNLAWFUL. Courts have Recognized That simple IGNORANCE of the LAW is NOT always Enough For Counsel to be INEFFECTIVE. Harich vs Dugger, 844 F.2d. 1464, 1470 (11th cir. 1998) But that is NO ANSWER Either. Trial Counsel's IGNORANCE of a point of LAW "That is Fundamental to their case combined with (their) failure to Perform basic Research on that Point is a quintessential Example of Reasonable performance under Strickland, Hinton vs Alabama, 571 U.S. 263 274, 134 S.ct. 1081, 1089, 188 L.Ed.2d. 1, 2014); Hollis vs Davis, 941 F.2d. 1471, 1478 (11th cir 1991)(IF Trial Counsel did not assert this Right because [They] were unaware of it, their Representation was not within the Range of competence demanded of Attorneys IN criminal cases"). Wilkins Attorney Had Plenty of Time during the Jury's deliberations over 9 hours and Several Recesses to Research The LAW IF He was unfamiliar with it. And it ultimately does Not matter IF Trial Counsel Subjectively thought that the on-going Forced deliberations would somehow Turn out well For Wilkins. As stated Earlier using Hammond again Counsels Tactical decision must be ONE that an Attorney Reasonably Could Have made.

67.

The fundamental error that wilkins Trial Counsel let go was one that any reasonable counsel would ~~have~~ NOT Have overlooked or thought unworthy of Pursuing, It was obvious error That unfolded over a period of 9 hours In a course of action that grew progressively worse. Counsel Had Plenty of Time to RECOGNIZE The ERROR from The First deadlock and A total of 8 Juror Notes to React. Counsel's Error In this Regard Prejudiced wilkins and Deprived Him of A Fundamental Fair Trial.

## Prejudice Prong.

Had Trial Counsel Chapman Not Errored and Instead Objected / and or moved For a mistrial There is a Reasonable Probability The Results of the proceedings would Have Been different, undermining Confidence In the out Come. Because The Judge would Have been Required to do So under Applicable law. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. To Sustain Chapmans Objection on or Granting a mistrial on Two counts.

one might ask. How Can we know if a Timely objection would Have been Sustained and made a difference In the Results, or that a mistrial motion would Have been Granted and Thereby Avoid the Conviction that occured without it?
The Supreme Court gives a guidance In Strickland. "An Assessment of the likelihood of a Result more favorable to the Defendant must Exclude the possibility of arbitrariness, whimsy, Caprice, Nullification" and the like.... The Assessment

68.

of prejudice should proceed on the Assumption that the Decision maker is Reasonably, Conscientiously, and Impartially applying the standards that govern the decision. It should Not depend on the idiosyncracies of the particular decision maker. at 695, 104 S.ct. at 2068. It doesn't matter for prejudice purposes whether the Judge at wilkin Trial Would have Sustained an objection, what counts is whether the Judge would have been Required to do so under applicable Law and if so, whether doing so would have Resulted in a Reasonable probability of a different Result. And The Answer is yes and yes.

A defendant "being Tried by a Jury is Entitled to the uncoerced verdict of that Body" Lowenfield vs Phelps, 484, U.S. 831, 241, 108 S.ct. 546, 552, 98 L.Ed. 2d 568 (1988) Coercion does Not mean "Simple pressure to agree" Smith vs united states 542, A. 2d. 823, 824 (D.C. 1988), As one court Explained, "Such Pressure is a Natural Function of Sending Twelve persons into a Jury Room to deliberate," Pressure becomes coercive when The Actions of the court Result in "a minority of the Jurors Sacrificing Their conscientious Scruples for the SAKe of Reaching Agreement Green vs united states, 309 F. 2d. 852, 854 (5th Cir, 1962), while a Trial Court may Instruct a deadlock Jury to continue deliberating, it "must Not Coerce any Juror to give up an Honest belief. United states vs Davis, 779 F. 3d. 1305, 1312 (11th Cir. 2015).

The Applicable Law at the Time of wilkins Trial was Lowenfield vs phelps, 484, U.S. 231, 241, 108 S.ct. 546, 552, 98 L.Ed. 2d. 568 (1988).

69.

Giving ▓▓▓▓ a Road map to Follow and prongs to
Satisfy In ORDER For The court to Grant a mistrial
For a defendant, That is Entitled To Amistrial After
The Prongs of COERCIVE DEADlock is met. The District
In ▓▓▓▓ Collaboration with The Eleventh Circuit Appeals
Examines the Totality of the Circumstances to SEE If
The Courts actions Created a Substantial Risk that
ONE OR MORE Jurors would be COERCED Into Abandoning
Their Honest Convictions United States vs Woodard,
531 F.3d. 1352, 1364 (11th Cir. 2008) The Relevant
Circumstances Include:

1). The Total Length of Deliberations;

2) The Number of Times The Jury Reported being deadlocked
   and was Instructed To Resume deliberations;

3) Whether any of the Instruction implied that the Jurors
   WERE violating their oath OR Acting Improperly by Failing
   To Reach a verdict.

4). The Time between the Final Supplemental Instruction and
   The Jury's verdict.

5). Whether The Judge Knew of the Jury's Numerical Split
   When He Instructed the Jury to continue deliberating

Defendant Wilkins Satisfies Four of the five prongs
That Would Show The Jurors WERE COERCED due to
multiple Instructions To KEEP deliberating to Break
a Deadlocked.

70.

Prong (1) ONE

The Total Length of Deliberations: Tr. P. 1355, 1381, The Jury For
Deliberated For Approximately 9 hours. Starting at 9:30 Am.
until 6:47 pm.

Prong (2) Two

The Number of Times the Jury Reported being deadlocked
And Instructed The Jury To continue Deliberating.
First Dead Lock First Instruction Trial P. 1380 (16-25);
1381 (1-9)

1380
Line 16. The Court: All Right, I'm Covering For Judge Altman
We Have a Note From the Jury. It says, "WE ARE NOT
UNANIMOUS ON TWO of the counts. WE ARE UNANIMOUS
ON FIVE.

The Court: Signed by Kirby Monestine
What's The parties position as to what the Response
Should be?

McMillan: I would ask Them to Keep deliberating
your Honor. I don't think that were quite to the point of An
Allen Charge Yet.

Line. 25 The Court: How long Have They been deliberating?

Tr. P. 1381 1-9

Line. 1  McMillan: Since 9:00 Nine Am This morning?
The Court: Mr. Chapman, what's your Position?
Mr. Chapman: I Agree with that your Honor
actually, I Think They started actually Deliberating at About
9:30 Am Because There was a computer problem, but Right Around
Nine 9:30 Am. So I would agree with Mr. McMillan
The Court: So I will write on The Note: Please
Continue deliberating And Send It back? Is that Agreeable
Line 9 For Every body

71.

After Jury Note Number Six announcing the First Deadlocked
The Jury sent a Seventh Jury Note Asking questions about Count-
3. And was called out and verbally/orally To Continue Deliberating
But The Decision Has To be unanimous on The Gun charge,
With That Same Instruction To continue To deliberate can be
construed as also continue to deliberate on dead locked meaning
2 Instruction to Keep deliberating on deadlock and 1 Instruct-
ion to Keep deliberating on Count-3, Trial Transcript 1382
(6-16); (1385 16-11).

Line. 6 (Judge Dimitroleaus Enter court Room)
The Court: Please Be seated
all Right, Were back on the Record
Counsels are Present mr. Wilkins is Present
We Have Another Note From the Jury, we Have questions
about Count-3 Part(A) and (B) is it possible to give a verdict
Without Specifying Which weapon or If it was "A" or "B"
It seem The Answer to that is "No?"
McMillan: That's correct your Honor, they Have
        To be unanimous about One.
Line 16 mr. chapman: I agree.

        Trial Transcript (1385 10,11)
Could Construed Second Instruction on deadlock to continue Deliberating And
First Instruction on Count-3 To continue deliberating.
Line. 10 So with that I'll ask you To Retire and continue
Line. 11 your Deliberations

72.

After Two Instructions to continue deliberating and a Seventh Jury Note and First deadlock. The Jury sends Its Now Eighth Note, Announcing They are still deadlocked on Two Counts. A modified ▓▓▓ Allen charge is now given with Three Additional Instructions to continue deliberating After modified Allen charge. Totaling Five Instructions to continue To deliberate, along with Coercive Language/Comments Embedded within the Instructions giving the Jury No choice But to Convict? After multiple Instructions to the Jury to continue Deliberating 5 In total. 3 After the Allen charge Coercing The Jury to Reach a verdict.

Trial Page 1386 Allen charge Given (1-14)

Line, 1 We Have Another Note from the Jury "all Evidence Has Been Reviewed, and WE ARE still completely at a deadlock on Two Counts

Whats counsel position about what WE should do at this Point?

Mcmillan: Your Honor, Its The Governments Position that at this Juncture, Having spent a considerable Amount of Time deliberating, Having been advised Once Already that they — were deadlocked Having Instructed Them to please Consider or deliberate r.. To please continue deliberating And still Having Now Some several Houres later, Indicated That they are Remaining Irretrievably deadlocked on Two Counts, that it Is Time For the to utilize the modified Allen charge And WE Respectfully Request the Court do so.

Third Instruction to Continue Deliberating After Allen charge
Tr. P. 1388 7-14

73.

Third Instruction  1388 7-14

Line. 7 I Have Another Note From the Jury All has
     Been Reviewed, and we are still completely at a Deadlock
     On Two counts
     I'd like to give you another Instruction
     members of the Jury. I'm going to ask that you
     continue your deliberation In An effort to agree on a verdict
     and dispose of this case. And I Have a Few Additional Comments
     I'd like For you to Consider as you do So
Line 15  This is an Important case. The Trial Has been

          Fourth Instruction To continue
      Deliberating After ALLEN charge
          Tr.P. 1389 22-25

Line. 22  I now ask that you Retire once again and Continue your
          deliberations with additional Comments In mind Apply
          Them In conjuction with all the other Instruction I Have
Line. 25  previously given to you... or Judge Altman previously gave
          to

           (5) Fifth Instruction to continue
       Deliberating After ALLEN charge
           Tr. 1390 (1-3)

Line. 1  you
Line. 2  and with that I'll ask you to Retire and continue
Line. 3  your deliberations

                    74.

Defendant Wilkins Satisfys Prong Number Two the Jury was Instructed Five Times To continue the Deliberating. THREE of Those Instruction WERE IN the midst of giving the Instruction, along with additional comments that WERE Embedded with coercive comments to INDuce the Jury To Reach a verdict, along with 8 Jury Notes and ONE preliminary Note.

<u>Prong THREE:</u> Whether any of the Instructions Implied that the Jurors WERE violating their oath <u>OR</u> Acting Improperly by <u>Failing To Reach a verdict</u>

Judge Ditmitroulea additional comments Along with the modified Allen charge <u>accusing Jurors</u> of <u>Acting Improper</u> on Implying They WERE acting Improper if They Fail to Reach a verdict gave The Jurors No other choice But to Reach a verdict.   Trial PagE (1388 LinEs 17-18)

Line.17  <u>If you Fail to agree on a</u>
LinE.18  <u>verdict, This case will be Left</u> OPEN and may Have to be Tried
LinE.19  <u>again</u> (Emphasis added)

Judge Dimitrouleas comments <u>Next Aimed Directly</u> at the Juror <u>Honest Held Beliefs</u> about being deadlocked on two counts To COERCE them to Reach a guilty verdict By Stating The phrase Twice In order to LeavE a deep Impression on the Jurors mind. "THERE'S No REason to believe." (Tr.P. 1388)
(Lines 20, 24(b), 25(A))
LinE.20  cost to both Sides, and "<u>THERE'S No REASON to believe</u>"
LinE.24(b) THERE'S iS NO
LinE.25(A) <u>REason to believe</u>

75.

Judge Dimitrouleas comments Further attack the Jurors and Hold-out Jurors Intelligence, Integrity, and Competence If they don't Reach a verdict. Trial P. (1388 Line 25(b)) 1388 Line 25(b) (1389 Line 1-3)

1388 Line 25(b) that the case could ever be submitted to 12

1389 Line. 1   people more Conscientious, more Imparhial or more Competent to

Line. 2   decide ... or that more or clearer evidence could be.

Line. 3   Produced.

Its as if Judge Dimitrouleas comments were Saying to the Jurors Especially Hold-out Juror Sarcastically. Your all smart Intelligent and are competent and Full of Integrity. Don't make a Dumb Decision Not to Reach a verdict or all that I said about your competent, more Imparhial, more conscientious all goes out the window and you will be seen as Incompetent, Cutthroat, and prejudice In the publics Eye and THERES NO REASON to believe He's Not guilty and I will say it again to those who didn't Hear me the First Time Specifically you Hold-out Juror. THERE'S NO REASON to believe He's Not guilty. If that was your Honest Held belief. Now I'm going To ask you To keep deliberating ~~~~~~ until you get a verdict This Now my 5th Time Instructing you to keep deliberating If you can Help it please No more Jury Note we've Had 8 of them already I'm hungry and Tired and wanna go Home.

PRONG FOUR: THE Time between the Final Supplamental Instruction and the verdict.

Immediately after Judge Dimitrouleas 5 Instruction to keep Deliberating and Coercive Comments the Jury came back

76.

with a verdict 40 minutes After the final Instructions After the Allen charge. Three Instruction to continue To deliberate were In the midst of Giving The Allen charge Tr. P. 1380; 1381; 1382; 1386; (1388 Lines 11,12) (Tr. P. 1390 Lines 2,3)

## Trial Transcripts

**Tr. P. 1380** 1:49 pm thursday November 7, 2019 Judge William P. Dimitrouleas Covers For Judg Altman Jury Note #6 Announcing to court First Dead Lock on Two Counts Signed by Foreman Kirby MONESTINE, To premature For modified Allen Charge.

**Tr. P. 1381** Instructed Jury to continue Deliberating Sent Back Written ON Jury Note From 1:56 pm until 4:48 pm.

**Tr. P. 1382** After Recess at 4:48 pm Judge Dimitrouleas Enters court Room With Seventh Jury Note, question about Count-3 part A and B. Second Instruction to Keep deliberating on Dead lock and weapons Charge.

**Tr. P. 1386** Recess Taken at 5:02 pm until 5:56pm, after Recess 5:56pm Jury Note Number Eight modified Allen Charge given along with additional Coercive Comments.

**Tr. P. 1388** Lines 11,12

Line 11 Instruction to Keep deliberating Inconjunction With additional comments

**Tr. P. 1389** Lines 22-25 Instructed to continue Deliberating

**Tr. P. 1390** Lines 2,3 Continue to Deliberate

77.

After The Final Supplemental Instruction Tr.P. 1390 Lines 2,3. The court RECESS at 6:02pm at 6:42pm Jury Had BROKEN the deadlock and Had a verdict Exactly 40 minutes Later. Jury Found Defendant guilty of count 1, 3, 6, 7.

The Supreme court In LowenField vs Phelps, 484 U.S. 231, 241, 108, S.ct. 546, 552, 98 L.Ed.2d. 568 (1988) GOVERNS COERCIVE Instructions and ALLEN charges Which was the Applicable Law at the Time of Wilkins Trial. The Supreme court Primary Focus In determining whethera verdict was COERCED After the Final Supplemental Instruction was How quickly a Jury UNANimously agreed on A verdict. In Defendant Wilkin case He met and Satisfied all but one of the prongs of United States vs Woodard 531 F.3d. 1352, 1364 (11th cir. 2008). And Had Wilkins Trial Attorney objected and or moved For a mistrial There is a Reasonable probability the mistrial would Have undermined the confidence In the outcome. Because the Judge was bound by the Applicable Law To Grant a mistrial or Sustained an objection. Lowenfield vs 484 U.S. at 240, 108 S.ct. at 552 (WE ARE mindful That the Jury Returned with its Verdict Soon After Receiving the Supplemental Instruction, and that this Suggest the possibility OF COERCION), At the Time of Wilkins Trial Federal LAW was Clear That the Risk of a COERCED verdict was unacceptable. The COERCIVE Circumstances That Led to the Verdict under-minded the Fundamental Fairness of the Trial and the Reliability of the verdict. The circumstances Entitle Wilkins to a mistrial by Federal LAW United States vs Amaya, 509 F.2d 8. 9-11 (5th Cir. 1975). The Failure of Wilkins Attorney to object and to move FOR mistrial as the coercive circumstance Piled-up was Prejudicial,

78.

THEREFORE, THE Supreme Court UNDER Lowenfield Vs Phelps, 484 U.S. 231, 241, 108. S. Ct. 546, 552, 98. L.Ed. 2d. 568 (1988), and UNITED STATES Vs Maya, 509 F. 2d. 8, 9-11 (5th Cir. 1975) Requires and Binds The Judge by Applicable LAW, To Sustain an objection and or Grant Wilkins a mistrial, Had Defendants Counsel moved For Either.

And Defendant being Entitled To the Relief Sought For Both would Have changed The outcome and undermine Confidence In The Verdict. A mistrial would Have Caused A possible NEW Trial. OR all Counts and The Indictment Dismissed.

**VI.** Trial Counsel Failed to object and move For a Remmer Hearing, AFTER Third Party Private Communication Between Court Room Security Officer and Juror #10 was Established by the Court.

Wilkins argues That His Counsel was INEFFective when He Failed To object and move For a Remmer Hearing when district Court Judge Altman Informed The Defense and Government that A Jurors Sent a preliminary Jury Note During a 15 minute Recess, mid-Trial. It was discovered

79.

during That period Before The Jury was brought
Back in, The Judge Revealed That a Private Comm-
unication Took place between his Court Room Officer
Alan LaTour and Juror #10 Paula Thompson
Trial Transcript Page 611 Lines 1-5

Line.1 Spoke Along to my Court Security Officer outside The
Presence of other Jurors an Alan Then Instructed Her
I'm Not Allowed To Talk to you, about this But
Put down whatever your question is In Writing
So my under standing based on that Interaction is

At This Juncture When The Judge Establish There
Was Communication between A Juror and a Third
Party Defendants Counsel should Have made an
Objection and or moved For a Remmer Hearing
To Investigate The private communication, and allow
The Government to Carry Its Heavy Burden of Demost-
Rating That The defendant wilkins was Not Prejudice
by The Private Communication. United State vs Martinez
14 F.3d. 543,550 (11th cir. 1994) ( once contact by a Third
party Has been proven with a Juror, the Burden Shifts to the govern-
ment to demonstrate Harmless ness. The presumption of prejudice is
Not Conclusive, but the Burden Rest Heavily upon The government to
Establish, after Notice To the defendant, That such contact with the
Juror was Harmless to defendant )

80.

Defendant Wilkins Trial attorney's Failure To object and or move For a Remmer Hearing was deficient performance For Strickland purposes. The Standard For Effective Assistance of Counsel is Reasonable Ness, Not Perfection. Strickland, 466 U.S. at 687, 104 S.ct. at 2064 (The proper Standard For Attorney performance is that of Reasonably Effective assistance); Harrington Vs Richter, 562 U.S. 86, 110, 131 S.ct. 770, 791, 178 L.Ed. 2d. 624 (2011) ("strickland does Not guarantee perfect Representation, only a Reasonably Comp- etent attorney); Yarborough Vs Gentry, 540 U.S. 1, 8, 124 S.ct. 1, 6, 157 L.Ed. 2d. 1 (2003) (The Sixth Amendment guarantees Reasonable competence, Not perfect advocacy Judged with the Benefit of hindsight).

The Reasonable Ness Of a Counsels performance is an objective Inquiry and because counsel's conduct is presumed Reasonable For a defendant to show that the conduct was unreasonable He must Establish That No competent Counsel would Have Taken The Action or Inaction that His counsel did Take.

Defense Counsel of course Need Not make meritless motions or Lodge Futile objections MEDERS Vs WARDEN. GA, Diagnostic Prison, 900 F. 3d 1330, 1349 (11th Cir. 2018) (It is Not Ineffective Assistance of counsel to Fail to make an objection that is Not Due to be sustained); Pinkney Vs Sec'y Doc, 876 F. 3d. 1290, 1297 (11th Cir. 2017) (An Attorney will Not be held to Have performed deficiently For Failing to perform a Futile act, one that would Not Have Gotten his client Any Relief).

That is Not The Case In defendant wilkins situation, Because

81.

An Objection or motion for Remmer Hearing would Have not been Futile or Lacking In merit. Because the Judge is bound by the Constitution and Law to Sustain or Grant The motion for A Remmer Hearing, When There is a Third Party Private Communication.

## Sixth Amendment

The Sixth Amendment Guarantees that the accused Shall Enjoy the Right to a Trial by an Impartial Jury, And be Confronted with The witness against Him, In a Criminal Case, Any Private Communication, Contact, or Tampering Directly or Indirectly with a Juror during a Trial about The matter Pending before the Jury is for Obvious Reasons deemed prejudicial. If Not made In Pursuance of Known Rules of the court and The Instruction and directions of The court made during the Trial, with Full Knowledge of Parties. The Presumption is Not Conclusive. But The Burden Rest Heavily upon the Government to Establish, After Notice To A Hearing of the defendant that Such contact with Jurors was Harmless to the Defendant.

The Fundamental Error That Wilkins' Counsel "Let go" was One That any Reasonable Counsel would Not Have overlooked or Thought Unworthy of Pursuing. Even Viewing His deficient Performance From a Tactical Point of view, There is No Indication In the Record that Counsel's Failure Even to Raise An objection or more For a Remmer Hearing... was a product of Any Tactical Fore-Thought and It can only be Speculated as to the Reason He didN't. Jackson vs Herring, 42 F. 3d 1350, 1360 (11th Cir. 1995).

Perhaps mr. Chapman didN't See the contact as a Constitutional Violation between Court Room Security Guard and Juror # 10 A Big Deal, Or He didNt Know That a Third Party Communication

82.

With a Juror was unlawful. However Simple Ignorance of the law is not an excuse or an answer either. ▮▮▮ Harich vs Dugger, 844 F.2d. 1464, 1470 (11th Cir. 1998).

Trial Counsel's Ignorance of a point of Law that is Fundamental to their Case Combined with His Failure to Perform basic Research on third Party Private ▮ Communication is a quintessential Example of unreasonable Performance under Strickland, Hinton vs Alabama, 571 U.S. 263, 274, 134 S.ct. 1081, 1089, 188 L.Ed.2d. 1, (2014); See Hollis vs Davis, 941 F.2d. 1471, 1478, (11th Cir. 1991) ( If Trial Counsel did not Assert this Right because [They] were unaware of it their Representation was not within the Range of Competence demanded of Attorneys In Criminal Cases)

THEREFORE Wilkins Trial attorney ▮Had No Conceivable Reason, No Reasonable Strategy For Not objecting and or moving For a Remmer Hearing; once A third party Private Communication Took place between Court Room Security Staff Alan LaTuur and Juror #10 Paula Thompson. His Error Resulted In A 17 year Sentence For His client Wilkins and a guilty verdict ON counts, 1, 3, 6, 7. See Hammond, 586 F. 3d at 1332 ( UNDER THE Eleventh Circuit Law THE question is NOT Why the defendant's Counsel Failed to move For a Remmer ▮▮▮ Hearing... But whether a competent attorney Reasonably would Have ▮bjected or moved▮▮▮ For one), ▮▮▮

Strickland Prejudice Prong

Had Trial Counsel Chapman Not Errored and object and moved For a Remmer Hearing. Theres a Reasonable Probability The Result of The proceedings would Have Been different, underming Confidence In the Verdict.

83.

Because THE Judge is bound by applicable LAW to sustain Chapman's objection and or Greanting a Remmer Hearing To allow THE Government to satisfy THERE Harmless / No preJudicial prong.

ONE might ask How can WE Know If a Timely objection would Have been Sustained and made a difference IN THE Results or that a Remmer Hearing would Have been Greanted and Thereby Avoid the ~~Conviction~~ conviction That accurred without it?

THE Supreme court gives us guidance IN strickLAND. "AN Assessment of the likelihood of a Result more Favorable To The defendant must exclude the possibility of Caprice, Nullification" and THE LiKe... THE ASSESMENT of PreJudice Should PROCEED ON the Assumption that the Decision maKER IS Reasonably Conscientious, and Impartfally Apply The standards That govern THE DECISION, It should Not depend on the IdiosynCRACIES of the paticular decision maKER Strickland at 695, 104 S.ct. at 2068.

It doesn't matter FOR preJudice purposes whether the Judge at wilkins Trial would Have Sustained an objection, What counts IS whethER THE Judge would Have been Required To do So UNDER Applicable LAW, AND IF So, whether doing So would Have Resulted IN a Reasonable Probability of a different Result And THE Answer to that Is YES and YES.

84.

The Applicable LAW at the Time of wilkins Trial
That Controls Third Party private Communications
of a Court Room Security OFFicer and a Juror is
The Sixth Amendment of the Constitution which
States:

Any Private Communication, contact, or Tampering,
Directly or Indirectly, with a Juror during Trial
about the matter Pending before The Jury is obviously
Deemed prejudicial.
IF Not made IN pursuance of Known Rules of the court
and The Instructions and directions of the court made
during the Trial with Full Knowledge of the parties.
But The Burden Rest Heavily upon the Government to
Establish, After Notice To An HEARING of the ████████
defendant that Such Contact with the Jurors was
Harmless to the Defendant.

The constitution is clear and NEEDS No Heightened Interpatation
████ States That Any Private Communication (Emphasis Added) Puts
███ the defendant In a prejudicial disadvantage IF the
Court Hasn't made Any Exceptions Pursuant to 606 (b)(2)(A-c.)
AND Defense and Government was Notified. That didn't Happen
In wilkins case ████████ TherEFore The Burden Rest Heavily
upon the Government to Establish After Notice to An
Hearing of the defendant that Such Contact was Harmless
to the defendant.

The Constitution makes clear that Defense Attorney
Should Have been Called to A Hearing ██████████████
Remmer vs united States, 98 LEd, 654, 347 U.S. 227 (1954)

85.

Parker vs Gladden, 385, U.S. 366, United States vs Watchmaker, 761, F. 2d. 1459, 1465 (11th Cir. 1985)

Therefore defendant was stuck in a prejudiced position until His attorney objects or moved For a Remmer But because of His Errong Failure to do so Defendant wasn't Just prejudice by the the Fact the Government Didn't Carry its burden to prove that The contact was Harmless and not prejudicial to Him but prejudice by His Attorney Not Objecting or moving For a Remmer, the defendant still Remains In A prejudicial Disadvantage Even as the Trial Continued Forward all the way to its verdict. Had the Counsel For Defendant Wilkins did Either to promote A Fundamental Fair Trial For Defendant Theres a Reasonable probability the Outcome would Have been different Because The District Court Judge would Have been Required by the Sixth Amendment Constitution To Sustain the Objection an or Granted A Remmer Hearing & Therefore Defendant Wilkin was provided Ineffective assistance of counsel and Deprived Him of a Fundamental Fair Trial and Therefore Wilkins Conviction Should be Vacated and Set aside. For Ineffective assistance of Counsel. Count 1, 3, 67 Should be vacated, Set AND Set aside.

86.

**VII.** INEFFECTIVE ASSISTANCE OF COUNSEL FOR Failure To Raise mulplicity Punishment ON Counts 1, 3, 6, 7. BECAUSE OF INAdequate RESEACH ON THE ISSUE of mulplicity.

Defendant Argues He was Found guilty by Jury Trial and ON DECEMBER 18, 2019, Following the Jury Trial Conviction He Filed A post-motion to withdraw COUNSEL As His Direct Appeal Attorney, Raising Issues of mulplicity of various Counts IN His Indictment, As well as Counts He was Found guilty of by Jury Trial. That He was Being PUNISHED For THE Same OFFENSE TWICE, AND COUNSEL Refused To Raise mulplicity of OFFENSES and punishment Due To INADequate RESEARCH And IGNORANCE OF THE LAW.

## Count - 1

Defendant Further Argues He was Found guilty of Possession of Ammunition In violation of TiTle 18 922(g)(1), 924(a)(2) ~~JUNE 25, 2018.~~ The date of THE Alleged OFFENSE Happened.

## Count - 3

Possession of Fire Arm by a Convicted Felon In violation of TiTle 18 922(g)(1), 924(a)(2). Ran Concurrent with Count-1 Both Gun and ammunition was Found In Same Location ON JUNE 25, 2018

87.

## COUNT - 6 and 7

**COUNT - SIX** OF THE Superceding Indictment __WITNESS Tampering__ 18 U.S.C. § 1512(b)(1).

**COUNT - SEVEN** OF THE Supeceding Indictment __WITNESS Tampering__ 18 U.S.C. § 1512(b)(3).

Both Counts Allegedly Happened From February 2018 To September 2018 at Coleman Federal Penitentiary - 2. IN which Both Counts Six and Seven were RaN - Concurrent. Same offense He was Punished For Twice.

IN Defendant's motion to withdraw Trial Cuunsels, The Record Demonstrates Trial Cuunsels IN Adequate **RESEARCH** and Response, For Failing to Raise The Issue of mulplicity Punishment. Because He Felt **HE** was wasting His Time.

### motion to withdraw Cuunsel
December 18, 2019
Pages 26 and 27

Page 26

The Court: Duplicity of Counts, The multiple GUNS ON Count
mR. Chapman: Right
The Court: EXCUSE ME, The guns IN different Count
mR. Chapman: And I was almost getting Frustrated to the point as to How much Time, I was Spending on that only to Realize That There was a good Faith basis to File That
mR. Wilkins NEVER wanted to HEAR Anything about a good Faith

88.

Page 27

Basis IF He Had the Ideal, It Had to be Filed, whether or not there was a good Faith basis For Filing It or not

But I Research many many Issues, to the Point where I thought my Time is so much better spent on Preparing Cross-Examination And other Things, That I wish I Had more Time. But I wanted to Research those Issues, because maybe Mr. Wilkins was Right, and Anything That I Thought He was Right On. I did File Those motions

But the 404 motion as I Recalled was Really my Idea That was Not One That He Ever Really pressed until I Raised It.

Counsel Chapmans Inadequate Research was Deficient and Below the Standard Required by Strickland vs Washington 466 U.S. at 687, 104 S.Ct. at 2064. which is Reasonable, Not Perfection. Yarborough vs Gentry, 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed. 2d. 1 (2003). (The Sixth Amendment guarantees Reasonable Competence, Not perfect Advocacy Judged with the Benefit of Hind sight).

The Reasonableness of Counsels performance is an objective Inquiry Chandler vs United States 218 F.3d, 1305, 1315 (11th Cir 2000). And Because Counsel's Conduct is presumed Reasonable a defendant must Establish that No Competent Counsel would Have Taken the Action that His counsel did Take. Defense counsel of course Need Not make meritless motions or objections. However Theres No Indication In the Record Counsels Failure to Raise

89.

mulplicitous offenses and punishments Due to His Inadequate Research was a product of Any Tactical Fore Thought. But The Record does Reflect The **scintilla** of Research He Did, He Thought was a waste of Time, or Perhaps He didn't Know mulplicity Punishments WERE unLawful Jackson vs Herring, 42 F.3d. 1350, 1360 (11th Cir. 1995)

motion For withdrawal █
of Counsel
December 18, 2019

Page 27
Attorney Chapman: But I Researched many many Issues to the Point where I Thought my Time is much better Spent on preparing Cross-Examination and other things.

Simple Ignorance of The Law is Not an Excuse. Trial Counsels Ignorance of a point of Law That is Fundamental To Their Case, combined with their Failure to perform basic Research on that point is a Quintessential Example of un Reasonable Performance under Strickland. Hinton vs Alabama, 571 U.S. 263, 274, 134 S.ct. 1681, 1089, 188 L.Ed. 2d. (2014). Hollis vs Davis, 941 F.2d 1471, 1478 (11th Cir. 1991) (If Trial counsel did Not Assert this Right because They Were unaware of it, Their Representation was Not within the Range of Competence demanded of Attorney's In criminal Case).

Defendant Wilkins Attorney From The Record Demonstrates His Performance In Adequately, Researching mulpliticous offenses and Punishment For The Same offense Twice, And Not Asserting That Right, Because He was Ignorant of that Law, That It Even Existed was unReasonable. His Performance was

90.

Not within the Range of Competence demanded of Attorney's in Criminal cases.

Him stating, "I Thought my Time is so much better on preparing cross-examination and other things."

Demonstrate that He knew Nothing about mulplicity Punishment and offenses, and in His Sub-par Research He couldn't Find Any Thing He Felt would Have merits. This Fundamental Error that Wilkins Trial Counsel "Let Go" and Failed to Adequately Research was one That any Reasonable Counsel would Have Not ~~over~~ Over-Looked or Thought unworthy of Pursuing. Hollis vs Davis, 941 F.2d.1471, 1478 (11th Cir. 1991).

Therefore Counsel's Deficient performance Deprived Wilkins of A Fundamental Fair Trial, of The United States Constitution.

Strickland Prejudice Prong

Had Trial Counsel Done Adequate Research on mulplicity of offenses and Cumulative punishments For the Same offense He would Have discovered Supreme Court Precedent Case Law. Rutledge vs United States 517 U.S. 292, 134 L.Ed. 2d. 419, 116 S.Ct. 1241; Ball vs United States, 481 U.S. 736, 95 L.Ed. 2d. 693 107 S.Ct. 2090 (1987). Which Controls mulplicity offenses and Cumulative punishments Holding They are unlawful And Require The Block Burger Test.

91.

BlockBurger vs United States 284 U.S. 299, 304, 76 L.Ed. 306, 52 S.Ct. 180 (1932) (It is presumed that a Legislature does not Intend to Impose Two punishments where Two statutory provisions proscribe the "same offense", The Test for Determing whether there are Two offenses is whether Each of the statutory provisions Require proof of a Fact which the other does not).

Defendant wilkins Argues His multiple guilty verdicts Counts 1,3,6,7. Satisfy The BlackBurger Test Required by The Supreme court. Pertaining to multiple punishments For the Same offense.

With Respect to The offense of Count-One Felon In Possession of Ammunition 922(g)(1), 924(a)(2) In violation of 18 U.S.C And Count-Three Felon In Possession of FireArm 922(g); 924(a)(2). Both ARE RAN CONCURRENT and Both Have The Same Statue 922(g)(1), 924(a)(2), Both offenses Have The Same Fact or Element that must be Proven. "That Person must Have been previously convicted of a Felony" and He "Possessed" Ammunition or A FireArm as a Felon. Both of wilkins offense Arise From the Same Event. They Both Have The Same punish-ment of 0-10years In prison That He's being Punished For. They Have The Same Assessment Fee of $100.00 Each He's Being Punished For Twice. Imposed by The court That is also unLawFul (18 U.S.C. § 3013) RAY vs United States 481 U.S. 736, 737, 95 L.Ed. 2d. 693, 107 S.Ct. 2093 (1987) (Presence of $50.00 Assessment precludes Application of Concurrent Sentence Doctrine)

Turning our Attention To counts Six and SEVEN Defendant was convicted of violating. Tampering with witness 1512(b)(1)(3),

92.

Both These offense satisfy the BlockBurger Test with Count-Six being the Lesser Included offense of The Two Same offenses.

Tampering with witness 18 U.S.C. 1512(b)(1)(3) Requires These Fact Elements To be proven. Knowingly uses Intim-idation, Threatens or corruptly Persuades Another person or Attempts to do so or Engage In misleading Conduct Towards another.

Count-Six 1512(b) Subsection(1) Requires Lesser Facts to Be proven, which is Influence, Delay, or pervent the Testimony of any person In an official proceeding making it the Lesser Included offense out of the Two.

Count-Seven Requires The Exact Same Fact Elements only In Subsection(3), It Requires proof of a Fact, which the other does Not.

Which is: Hinder, Delay, or prevent the communication to A Law Enforcement officer, or Judge of the united States of Information Relating to the commission or Possible commission of a Federal offense or violation of Condition of Probation, Supervised Release, Parole, or Release pending Judicial proceedings.

Punishing Defendant wilkins For the Same offense Twice and Imposing $100.00 assessment FEES on count Six and Seven. Then Running the Both offenses concurrent, Imposing A 8 Level and multiple Enhancements U.S.S.G. § 2J1.2(b),(1)(B), 2J1.2(b)(2), 2J1.2(b)(3)(C) and 4A1.3. They Both Carry The maximum Sentence of 20years In prison.

93.

THEREFORE Counts ONE, THREE, SIX and SEVEN HaVe UNLAWful Concurrent Sentences. Satisfying the Black-Burger Test. That Requires as a Remedy. All underlying convictions as well as the Concurrent Sentence based upon it, along with all of its Enhancements, $100.00 Assessment FEES To be vacated. Rutledge vs United States 517 U.S. 292, 134 L.Ed. 2d. 419, 116 S.Ct. 1241 (In accordance with principles Rooted In Common LAW and Federal Constitutional Jurisprudence, the united States, Supreme Court will presume That where Two statutory provisions proscribe The Same offense, a Legislature does Not Intend to Impose Two punishments For that offense.).

Ball vs United States, 470 U.S. 856, 861-865, 84 L.Ed 2d. 740, 105 S.Ct. 1668. ( The court concluded that congress did Not Intend to Allow punishment For both offense and Held that the ONLY Remedy consistent with The Congressional Intent was To vacate ONE of THE underlying convictions as well as the CONCURRENT Sentence based upon it; and Explained That the Second conviction does Not Evaporate Simply because of it's Collateral Consequences – e.g., delay. ).

Had Trial Counsel Adequately Researched mulplicity offense and punishments And Not overlooked This Issue as a waste of Time There's a Reasonable Probability, The outcome Would Have been Different. The Record Demonstrates Counsels Glaring Error That prejudiced The Defendant. Because it Resulted IN a Double punishment and multiple Enhancements. a 17 1/2 year Sentence, and without the Double punishment

94.

Defendant would Have Received His original Guideline Sentence of a 37 months to 46 months. And There's A Reasonable Probability Defendant would Have Plead guilty. Counsels Error Has possible Future punishments For the same Offense with Adverse Collateral Consequences of the Second conviction, although Ran concurrent, It will delay His Half-way House Eligibility, Increased sentence under Recidivist Statue For a Future offense That make It presumptively Impermissible To Impose, It will Inter-Fer with prison custody Points on placement to a Lesser Custody Facility of a medium or Low Institution, Ball vs united states, 470 u.s. 856, 861-865, 84 L.Ed. 2d, 740 105 S.Ct. 1668; Whalen vs united states 445 u.s. 684, 691-692, 63 L.Ed. 2d. 715, 100 S.ct. 1432.

There For, Defendant Received Ineffective assistance of counsel In violation of His 6th Amendment Rights of the constitution Strickland vs washington, 466, C No Reasonable Not Perfect Attorney would Have overlooked This.

**VIII.** Ineffective Assistance of Counsel Failure to Raise mental Health Suicide Attempts of Government Key witness Crystal Sweeting.

Defendant wilkins Now Argues Trial Counsel's Failure To Raise This Issue In Cross-Examination Denied Him of His Sixth Amendment Rights to Fully Confront and

95.

Cross-Examine The Governments Key witness Crystal Sweeting with material Evidence as to Her Vendetta against Defendant and Credibility because of Her mental Health.

### Sixth Amendment

Constitutional Right of accused to be Confronted with witness against Him MEANS MORE Than being Allowed to confront witNESSES physically and a primary Interest secured by it is the Right of Cross-Examining U.S.C.A. Constitution Amendment Sixth.

Pointer vs Texas, 380 U.S. 400, 85 S. Ct. 1065, 13 L.Ed. 2d. 923 (1965) Douglas vs Alabama 380, U.S. 415, 418, 85. S. Ct. 1074, 1076, 13 L.Ed. 2d. 934 (1965) ( Professor Wigmore stated,

"The main and Essential purpose of Confrontation is to secure For the opponent the opportunity of Cross-Examination. The opponent demands Confrontation, Not For the Idle purpose of Gazing upon the witness, or of being gazed upon by Him, But For the purpose of Cross Examination, which cannot be Had Except by the Direct And personal putting of questions and obtaining Immediate Answers " S.J. Wigmore, Evidence 5 1395 P. 123 (3d. Ed. 1940)

Defendant Further Contends He Has on Numerous occassions asked His Attorney before Trial In the midst of Trial To Cross-Examine Crystal Sweeting about Her

mental Health and that the Government was Triggering Her Suicidal Attempts with Driving Her crazy by Threatening Her and coercing Her To Fabricate Her Grand Jury Testimony with Stirring up The Vendetta She Had with Defendant Wilkins Who Is The father of Her son, Because He was Now dating Her Friend Grace Hensley.

### motion to withdraw counsel

motion Page 19 Line.6-25

what about the question of all THESE other calls Involving Crystal Sweeting where she mentioned that she Had Suicidal thoughts and also, I guess, other calls that He Thinks might Have constituted Brady?

mr.chapman: THERE - mr wilkins did mention that many Times about how The Fact that She Had mentioned She was Suicidal. I Remember Looking at the Transcript of Her Call and She didn't say why She was Suicidal. and my concern was that IF I questioned Her about That, She would say, "of course I was Suicidal Chris was constantly calling me From The Jail, and it was Driving me crazy", So Instead I'm Sure The court Remembers.—

The Defendant: That's Not How the...

The Court: your Not Allowed to speak when He is Speaking, He didn't Interrupt when you were speaking

Line 25   Defendant: I ain't Finished.

motion Page 20 1-16

The Defendant: Yes 'sir
The Court: Go Ahead, mr. chapman

97.

MR. Chopman: The paticular call that mr. wilkins was pointing out,
I didn't Think that I could Impeach her. It was Too
Broad, these statements that I'm upset, I'm Suicidal as
To why. And the point was Even she many Times
Referred to Special Agent connors as I believe,
"That bitch", That pointed out how upset she was
That the government was pressuring her to Testify
In this case.

---

motion Page 21

Line, 1  The Defendant: my Response to that is, It doesn't matter what
He was Insinuating It's For Impeachment
She has a mental Disability, Part of Brady.
I'm suppose to Have. All documentation pertaining
To that. That was missing In my Discovery Not
only that a week From Trial she checked Into A
mental Hospital To commit Suicide. So, The Thing
That, what I'm Looking under Brady vs maryland,
I'm Suppose to Have All discovery pertaining to
mental Health, mental Illnesses pertaining to
Individuals Far as witnesses. She's the Star
Witness, Why wasn't that In my discovery?
But small portions of it was In my discovery
and when I Told Him to contact the govern-
ment In Regards to that, He Never Did it.

The Court: Let me Ask You said, "You've seen this call and the
Transcript," So It Sounds like You did Have it.

mr. Chopman: The paticular call that you mr. wilkins was
Referring to Yes, I did See That

98.

The court: So what do you mean you didn't have it in discovery? If your Lawyer and you are going over it, how do you not have it?

The Defendant: Because I told him ~ we have the transcript when she said it last year February, she said it over the phone that the government, Sara Connors and them are pressuring her, that she feels like, she wants to commit suicide

---

motion page 22 1-4; 17-21

The court: okay

The Defendant: Now when they played the phone call conversation in Trial, they didn't play that specific call but during Trial I kept telling Him

---

LINE. 17 The court: So Theres No Brady Violation what There maybe is There maybe <u>Ineffective Assistance of your counsel in Failing To Elicit or Play that Paticular call.</u>

Defendant: Right.

---

motion page 23 1-11

The court: First of all, to question a Female witness in a case involving a male defendant who's alleged to have threatened Her and oppressed Her in some ways over and over again in Front of a Jury that involve both Men and women, To Try to Blame Her and make Her seem crazy because of Her Suicidal Thoughts, seem to me a very poor Idea. In any event, It was an Ideal That clearly could have Back Fired in a Number of ways; one of which is, the Jurors would just Find it distasteful that you and your Lawyer were bring

99.

out all This very dirty Laundry with Respect to Her personal mental Health state.

_____

The Irrational and unreasonable Decision by Defendants counsel of why HE Refused To Raise Her mental Health problems on cross-Examination was unreasonable and un strategic. Counsel deficient Performance Falls below the Standard of Strickland vs Washington 466 U.s. at 687, 104 S.ct at 2064) which is Not Perfect Representation but Reasonable Competent Representation.

Defendants counsel unReasonable decision To "Let that Go" Is In Direct contrast with Supreme Courts Decision In Davis vs Alaska, 415 U.S. at 316, 94 Sict, at 1110. ( The court observed that the cross-Examiner is not only permitted To delve Into the witness' Story To test The witness perception and memory but the cross-Examiner Has Traditionally been allowed To Impeach, To discredit the witness).

Similarly In United States vs Williams 592 F.2d. 1277, 1281 (5th Cir 1979) (The court Noted that cross-Examination In matters Relevant to Credibility out to be given wide scope).

In Greene vs Wainwright 634 F.2d. 272 (5th Cir. 1981) The district Dismissed a petition For Habeas Corpus Claiming a Violation of the Right to Confrontation. The state Trial Judge Had prohibited The defendant From questioning The states chief witness about His mental Conditional And about Certain Bizarre criminal Actions" at 274 His Credibility was crucial To The states Case Id at 275. The Fifth Circuit Reversed holding That the denial of an Opportunity To present Evidence Regarding The "Alleged Recent history of mental Instability Exceeded any possible Trial Court discretion".

100.

GREENE Controls This Issue. The Restrictions on Cross-Examination In This Case are Even More Egregious Than Those Recently Condemned In GREENE. Because The dispute Suggest a history of psychiatric disorders manifesting Themselves In Violent Threats and manipulative and destructive conduct having specific Relevance to the Facts at Issues. As In GREENE The witness In question was the chief witness For the Prosecution. SHE Initiated and pursued The Investigation of Bay Therapy. She was an Insider to the Fraud Scheme, Who Testified In detail about the operation and about the Activities Of Slater and ~~Lindstrom~~ Lindstrom.

In Defendant Wilkins Case Which Resembles GREENE'S Case and Lindstrom In a Number of ways. ONE Crystal Sweeting Who was the Governments Star witness Initiated and pursued The Investigation by Calling United States Attorneys office In Which A.T.F Agent Sara Connors was assigned to Crystal Sweeting Who began giving False Information To Sara Connors about the Alleged Criminal Conduct of Defendant Wilkins. Crystal Sweeting ~~was~~ Had a mental Disorder which manifest In The Form of Revenge vendettas ~~and~~ against Wilkins Because He was Now In a New Relationship with Her Friend Grace Hensley. United States vs Summers 598, F. 2d, 450, 460 (5th Cir. 1979) (where the witness The accused SEEKS to Cross-Examine is The "Star" Government witness providing an Essential Link In the Prosecutor's Case, The Importance of Full Cross-Examination to disclose possible Bias is Necessarily Increase). The Summers Court Found It was Reversible Error and unconstitutional depriving the Defendant

of Their Sixth amendment guarantee of the Right to Confrontation and Cross Examination.

Like In Lindstrom 698 F.2d. 1164, Defendant wilkins Prior To Trial Sought Through His Counsel To get Him to get The paticular prison phone call To Elicit Information From crystal Sweeting Pertaining Her mental Health and why she wanted to Commit Suicide, But was Ignore by Trial Counsel In United States vs Lindstrom 698 F.2d, 1164, the Court stated Certain Forms of mental disorders Have High probative value on Issues of Credibility, Although The debate over proper Legal Role of mental Health professionals Continue To Rage, Even Those Who would limit The Availability of Psychiatric Evidence acknowledge That many Types of Emotional or mental defects may materially affect the accuracy of Testimony a Conservative List of Such defects would Have to Include the psychosis, most or all of the Neurosis defects In the structure of The Nervous System, mental deficiency, Alcoholism, drug addiction, and Psychopathic personality's, Juvenile Psychiatric opinions as To credibility of witnesses.

mental Illnesses may tend to produce bias In a witness' Testimony. A psychotic's veracity maybe Impaired by lack of Capacity to observe correlate actual Events. And For Defendants Counsel To "Let That Go" was deficient and unreasonable and Deprived wilkins of A fundamental Fair Trial and Reasonable Assistance of Counsel.

102.

## STRICKLANDS PREJUDICE PRONG

Had Trial Counsel not Errored and Explored Every Facet of Relevant Evidence pertaining To the Credibility of Crystal Sweetings mental Health, who Testified against Him and Evidence on Her mental Capacity that SHE checked Into a mental Health Facility because she wanted to commit suicide who Have been Highly Probative of Her Ability to Comprehend, Know and Correctly Relate the Truth. The Readily apparent principle is that the Jury should within Reason be Informed of all matters Affecting a witnesses credibility to Aid In their determination of the Truth.

Wilkins Had The Right To Attempt to Challenge Crystal Sweetings credibility with Competent or Relevant Evidence of any mental defect or Treatment at a Time Probatively Related To The Time Period about which She was Attempting to Testify. Had Trial Counsel Raised This Issue of Her mental Health theres a reasonable probability That The Jury would Have Taken That Information Into Consideration and Possibly Change the outcome of defendants Trial, with a Not guilty verdict on all Charges. A Reasonable Competent Not Perfect Counsel would Have Not overlooked This Issue of a star witness mental Health, therefore Defendants Counsel provided Him with INEFFECTIVE assistance of Counsel In violation of His Sixth Amendment Rights to Effective assistance of Counsel. Defendants Conviction Should be vacated and set aside until A Evidentiary Hearing be Held allowing Counsel To Explain His Performance.

103.

Christopher T. Wilkins
Christopher Wilkins, #02920-104

## VERIFICATION

I Christopher Wilkins verify under Penalty of Perjury. Pursuant to 28 U.S.C. §1746. That The Foregoing is True and correct, Executed this 5th Day of January of 2023,


Christopher Y. Wilkins
Signature.


## Pro'se Litigant

movant Request as a pro'se litigant That This Honorable Liberally construed His 2255 memoradum of law In light. Of HAINES vs KERNER, 404 U.S. 519, 520-21, 92 S.ct. 594 (1972); Hughes vs Rowe, 499 U.S. 5,9, 101 S.ct. 173 (1980); ERickson vs Pardus, 551 U.S. 89,94, 127 S.ct 2197 (2007). That He may Receive The Benefits of A Pro'se Litigant and Not A Trained Attorney.